CASE 94.—ACTION BY ALLEN COUNTY AGAINST THE UNITED STATES FIDELITY & GUARANTY CO., AS SURETY ON A CONTRACTORS BOND FOR BUILDING A COURT HOUSE.—May 9.

## Allen County v. U. S. Fidelity & Guaranty Co.
## U. S. Fidelity & Guaranty Co. v. Allen County

Appeal from Allen Circuit Court.

JOHN M. GALLOWAY, Circuit Judge.

From the judgment both parties appeal. Affirmed on defendants appeal and reversed on plaintiffs appeal.

1. Appeal—Right of Review—Separate Appeals—Where a judgment authorizes an appeal by each party to the suit, each party may pray an appeal from the judgment against him, and the appeals may be prosecuted on the same record, if

the parties desire so to do, or each party may bring up his own record.

2. Mechanics' Liens—Contractors' Bonds—Liability of Surety— Extent of Liability—A contract between a county and a contractor for the construction of a court-house stipulated that the contractor should refund to the county all moneys it might be compelled to pay in discharging any liens. The contractor executed a bond, conditioned on his performance of the conditions of the contract. He abandoned the work, and laborers and materialmen filed liens for their claims. The county paid the claims without suit, though there was no money due to the contractor. Held, that the surety was liable 'for the amount paid to the claimants; they having the right, under the express provisions of Ky. Stats., 1903, section 2463, to require the county to pay their claims, though it did not owe the contractor anything.

3. Principal and Surety—Contractors' Bond—Liability of Surety— Modification of Contract—A surety on the bond of a contractor for the construction of a court-house is not discharged because changes were made in the contract by the building committee appointed by an order providing that it should not have the power to make any changes in the specifications adopted by the fiscal court.

4. Same—Abandonment—Notice of Cancellation—A contract for the construction of a court-house provided that on the failure of the contractor to prosecute the work the county might, after ten days' written notice to him, terminate the contract. The contractor executed a bond conditioned on the performance of his covenants. He abandoned the contract and absconded. The county attempted to give the required notice before canceling the contract, but, on being unable to do so, it completed the work. Held, that the surety was not discharged from liability, the county being only required to exercise reasonable diligence to serve the notice.

5. Same—A contract for the construction of a court-house stipulated that the expenses of the county in finishing the work should be certified by the architect, whose certificate should be conclusive. The contractor executed a bond, conditioned on his performance of the contract. The county incurred expenses in finishing the work after default by the contractor. At a meeting of the building committee and the architect "for the purpose of auditing  x  x  x  the expenses incurred by the county by reason of the  x  x  x  breach of the contract," the expenses incurred were audited and certified as

provided by the contract. Held, that the surety was not discharged from liability because the certification was not signed by the architect.

BODLEY & BASKIN for appellee, Guaranty Co.

(No brief in the record.)

McQUOWN & BROWN, E. C. WAIDE and W. C. GOAD for appellant, Allen county.

## POINTS AND AUTHORITIES CITED.

1. The material man may maintain action in his own name. (Kauffman v. Cooper, 65 N. W., 796; Bowdilct v. Gourdy, 24 Pa. Sup. Ct., 342; Baker v. Bryan, 21 N. W., 83; St. Louis, &c. v. Von Phul, 34 S. W., 843; Schrieber v. Worm, 72 N. E., 852; Hall v. Alford, 105 Ky., 664.)

2. A mechanics' lien may be asserted against a county building and attaches to the county funds. (Roe & Lyon v. Scanlan, &c., 98 Ky., 24; Ausbeck v. Schordien, 20 Ky. Law Rep., 178; B'd of Comr's v. Young, 34 Pac., 741; City of Topeka v. Thomas, 40 Pac., 930.)

3. Section 2463 Ky. Statutes is constitutional. (Hightower v. Bailey, &c., 108 Ky., 198; Hodges v. Davidson, 23 Ky. Law Rep., 2078; Jones v. Hotel Co., 86 Fed. R., 370; Mfg. Co. v. Falls, 90 Tenn., 466.)

4. Contracts should be so interpreted as to give common sense meaning to the language used. (Hildreth v. Forrest, 4 J. J. M., 219; Hunter's Adm'r v. Miller's Ex'r, 6 B. M., 619; Schultz v. Johnson, 5 B. M., 499; Meriwether v. Lewis, 9 B. M., 168; Montgomery v. F. Ins. Co., 16 B. M., 427.)

5. Sureties in Contractor's bonds are liable for unpaid claims of material men. (Mayes, &c. v. Lane, 25 Ky. Law Rep., 824; Lyman v. City Lincoln, 51 Mich., 531; Knapp v. Schwaney, 56 Mich., 349; Korsney P. & H. Co. v. McClay, 62 N. W., 50; Sample v. Hale, 34 Neb., 794; Ovington v. Aetna Indemnity Co., 78 Pac., 1021; Kiessig v. Alspaugh, 13 L. R. A., 112; Taylor v. Jeter, 24 Mo., 244; Friend v. National Surety Co., 78 S. W., 69.)

OPINION OF THE COURT BY JOHN D. CARROLL, Commissioner.

These two appeals are prosecuted on the same record and from the same judgment. The facts involved in this litigation are substantially these: In March, 1903, Allen county entered into a contract with one R. P. Manley to erect a courthouse, in consideration for which the county obligated itself to pay Manley $12,987. The contract contains several articles. Those that are pertinent to an understanding and disposal of this case are as follows:

"Article 3. No alteration shall be made in the work shown or described by the drawings and specifications except upon a written order of the architects. When so made the value of the work added or omitted shall be computed by the architects, and the amount so ascertained shall be added or deducted from the contract price."

"Article 5. Should the contractor fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, such refusal, neglect, or failure being certified by the architects, the owner shall be at liberty after ten days' written notice to the contractor to provide any such labor or material and to deduct the cost thereof from any money then due, or thereafter to become due, to the contractor under this contract. And if the architect shall certify that such refusal, neglect, or failure is sufficient ground for such action, the owner shall also be at liberty to terminate the employment of the contractor for said work, and to employ any other

person or persons to finish the work and to provide the materials therefor, and the expense incurred by the owner as herein provided either for furnishing materials or for finishing the work, and any damage incurred through such default shall be audited and certified by the architects, whose certificate therefor shall be conclusive upon the parties.

"Article 6. The contractor shall complete said building on or before October 31, 1903, and in default of his completing the courthouse on or before October 31, 1903, he agrees to pay the owners $2.50 per day on each day thereafter."

"Article 9. If at any time there shall be evidence of any lien or claim for which, if established, the owner of said premises might become liable, and which is chargeable to the contractor, the owner shall have the right to retain out of any payment then due and thereafter to become due an amount sufficient to completely indemnify him against such lien or claim. Should there prove to be any such claim after all payments are made, the contractor shall refund to the owner all such moneys that the latter may be compelled to pay in discharging any lien on said premises made obligatory in consequence of the contractor's default."

For the faithful performance of this contract the county required the contractor to execute to it a bond, which he did, with the United States Fidelity & Guaranty Company as surety. This bond provides that the company is bound to Allen county in the sum of $6,000 conditioned that "if the said principal (Manley) shall well and truly indemnify and save harmless the said obligee (county) from any pecuniary loss resulting from the breach of any of

the terms, covenants, and conditions of said contract on the part of said principal to be performed, then this obligation shall be void; otherwise, to remain in full force and effect:'' Provided, first, that the county shall notify the company within 30 days after the breach of the contract by Manley; and, second, that in case of such default the company shall have the rght, if it so desires, to complete or procure the completion of the contract.

The contractor commenced to work some time in April, and abandoned the contract on August 10, 1903, previous to which time he had been paid on the contract the sum of $9,974. A few days thereafter the county notified the guaranty company of the abandonment of the contract by Manley, and about October 1, 1903, the architects certified to the county that Manley had abandoned the contract, and the county had a right to terminate it upon notice to Manley. Thereupon the county wrote and addressed to Manley at his last known place of address several letters, and also endeavored to ascertain his location that notice might be given him. The letters addressed to Manley were not delivered, nor was the county able to learn of his whereabouts. The county also wrote two or three letters to the guaranty company, informing it of the inability to locate Manley, and asking its advice as to what should be done in view of the situation of affairs. The company took no action, however, and on October 31st the county canceled the contract with Manley and entered into a new contract with another contractor to complete the building. In January, 1904, the county instituted this action on the bond to recover from the surety $987, the excess it was obliged to

pay to have the building completed over the contract price agreed on with Manley, and $49.35, the architects' commission on this excess $115 penalty for delay of forty-six days in completion of the building, $90 incurred in reletting the contract, and $3,132 paid by it to discharge liens of laborers and materialmen employed by Manley and to whom he was indebted in this sum. Mechanics' liens for these claims had been duly filed in the clerk's office, and they had been found by the fiscal court of the county to be just, but no suit had been instituted on any of them. The guaranty company resisted payment of the $3,132 on the ground that in paying these claims the county was a mere volunteer; that until compelled by process of law to pay them the county suffered no loss, and that, as no lien could be asserted against the courthouse and the county had no funds in its hands that could be reached by these lien creditors, it could not be required to pay these claims; that the architect had not certified to the correctness of the items of $115 and $90—and sought to avoid liability for any amount upon the ground that material changes had been made in the contract by the county and Manley without the direction of the architect, and that the county committed a breach of its contract in taking charge of the work and canceling the contract without giving to Manley ten days' notice. Upon the trial of the case the lower court adjudged that the county recover of the guaranty company the sum of $1,241.35, being the full amount claimed by it on the items independent of the $3,132. As to this item, the court found in favor of the guaranty company. From this judgment, both parties asked and were granted an appeal by the lower court.

Counsel for Allen County insist that this court cannot take cognizance of the appeal prayed by the guaranty company from the judgment against it for $1,241.35, because they say that this is a cross-appeal from that portion of the judgment, and that a cross-appeal cannot be granted in or by the Circuit Court. It is true that the Circuit Court cannot grant a cross-appeal. It must be granted by the Court of Appeals. Murphy v. Blandford, 11 S. W., 715, 11 Ky. Law Rep., 125; Mudd v. Mullican, 12 S. W., 263, 385, 11 Ky. Law Rep., 417; Hancock v. Hancock's Adm'r, 69 S. W., 757, 24 Ky. Law Rep., 664. But the guaranty company prayed an original and not a cross-appeal; the judgment of the lower court reciting: "The plaintiff prays an appeal to the Court of Appeals which is granted. The defendant United States & Fidelity & Guaranty Company objects and excepts to the judgment rendered against it herein, and prays an appeal to the Court of Appeals, which is granted"—and the record was filed in the clerk's office of this court on the same day by both parties and each party paid the tax thereon. We are of opinion that, in cases where the judgment authorizes an appeal to this court by each party to the litigation, each party may pray an appeal from the judgment against him in the lower court, and they may prosecute the appeal upon the same record if they desire to do so, or each party may bring up his own record.

The record does not disclose the ground upon which the lower court rejected the claim of the county for $3,132, but it is probable that it was disallowed for the reason stated by counsel for the guaranty company in their argument against its validity in

this court. It is true that county or municipal property devoted to public use and necesasry in the proper administration of governmental affairs will not be sold to satisfy a mechanics' lien. Roe & Lyon v. Scanlan, 98 Ky., 24, 17 Ky. Law Rep., 595, 32 S. W., 216; Noonan v. Hastings, 101 Ky., 312, 19 Ky. Law Rep., 485, 41 S. W., 32, 72 Am. St. Rep., 419. But in both of those cases it was held that the laborers and mechanics might file their liens and have subjected to the payment of their debts money due by the municipality to the contractor. In this case, at the time these liens were filed and paid, there was no money due by the county to the contractor. In fact, it required more than the amount of money due by the county under its contract at that time to pay for the completion of the building. Therefore there was no money in the hands of the county that these lien creditors could subject to the payment of their debts. and it is argued by counsel for the guaranty company, that, as these lien creditors could not subject the public building to the satisfaction of their debt, nor enforce their liens against any money in the hands of the county, they were entirely without remedy, and, although they furnished material in the construction of the building, must be denied the right to receive pay for it. The this argument we cannot assent. It is against public morals and opposed to every principle of justice and fair dealing. As aptly said in Hightower v. Bailey, 108 Ky., 198, 22 Ky. Law Rep., 88, 56 S. W., 147, 49 L. R. A., 255, 94 Am. St. Rep., 350, "every one who by his labor or material has contributed to the preservation or enhancement of property of another thereby acquires a right to compensation." If

the county had refused to pay these honest claims, the creditors could have applied to the courts for redress, and would not have been turned away empty-handed, as the authorities of the county would have been forced by the mandatory process of the law to levy a tax to pay these debts. Under the present statute, laborers and materialmen may require the owner to pay their claims, although the owner may have no notice of the claims and does not owe the contractor anything. Ky. Stats., 1903, section 2463; Hightower v. Bailey, 108 Ky., 193, 22 Ky. Law Rep., 88, 56 S. W., 147, 49 L. R. A., 255, 94 Am. St. Rep., 350; Nelson Mfg. Co. v. Mann, 71 S. W., 851, 24 Ky. Law Rep., 1547. And there is no reason why a municipality, that erects buildings for the use of the public, should occupy in this respect a more favorable position than the citizen. Municipalities, in the creation of debts, are controlled by certain limitations; but within these limits the municipality occupies toward the laborer or materialman the same attitude as the citizen. Each should stand on the same footing. One no more than the other should be permitted to secure the benefit of labor and material in the construction of useful buildings without paying for it. In fact, the municipality should be required to respond more promptly to the mandate of the law than the citizen, and held to a stricter accountability in the payment of its just and legal obligations. And where a municipality has within constitutional limits provided for the erection of a public building and secured in its construction the labor and material of the citizens the court will compel it to pay him. Therefore the argument of counsel that the county, in paying these lien credi-

tors, acted as a mere volunteer, and could not have been required to pay any of them, is not well founded. The contract obligated the guaranty company to indemnify the county against loss, and to refund to it any money that it might be compelled to pay in discharging any lien on the premises and save it harmless from pecuniary loss resulting from the breach of any of the conditions of the contract, and in paying these lien creditors the county acted entirely within its rights, and was fully protected by the contract with the guaranty company.

There is no question about the correctness of the accounts, nor is there any dispute that they were valid against the contractor. This being so, we can see no good reason why the county should be obliged to suffer itself to be sued by these different claimants and have judgment rendered against it for the debts and the court costs; nor is it necessary that this should be done in cases of this character to enable the owner of the property to recover the amount paid from the surety on the bond of the contractor. If the correctness of these claims was disputed, or any issue was made, supported by proof as to whether or not the claims were due by the contractor, a different question would be presented, and in such a case it might be necessary, in order to recover, that the claim should be prosecuted to a final judgment, giving the interested parties an opportunity to make a defense.

The contention that material changes were made in the contract by the county and the contractor without direction of the architect is not supported by evidence. In fact, there is no evidence at all that any change of any character was made in the contract

after the guaranty company become bound on it. It is also questionable from the evidence whether the building committee and the contractor made changes in the contract; but, assuming that changes were made by the building committee and the contractor, they cannot affect the right of the county to recover on the bond of the surety, because the building committee had no right or authority from the county or its authorized agents, the fiscal court, to make any changes in the building contract. The order appointing the building committee provided that "said committee shall not have power or authority to make any changes in the plans and specifications adopted by the court for the construction of said house." The fiscal court alone had power to make changes in the contract, and no alteration whatever was made by its direction. In Perry County v. Engel, 116 Ky., 594, 76 S. W., 382, 25 Ky. Law Rep., 813, Engel asserted a claim against the county for work done by him under a contract with the county judge, and the court said: "It is not claimed that the fiscal court of Perry county ordered this work done at all. The county judge had no authority to contract for work on behalf of the county, except under the order of the fiscal court. Appellee is required to take notice of the law. He is bound at his peril to know the extent of the authority of the agent of the county in contracting with him. All persons must take notice that a county can contract only in the manner and by the persons and for the purposes expressly provided by statute." Trustees of Bellview v. Hohn, 82 Ky., 1.

The contract provides that upon the failure of the contractor to prosecute the work with diligence the

county may, upon direction of the architect and after ten days' written notice to the contractor, terminate the employment and cancel the contract; and it is urged that the county failed to give the contractor the notice required by the contract before canceling it, and that in this respect the county committed a breach of the contract, and therefore cannot recover from the surety. The record discloses the fact that the county made every effort to give written notice to the contractor, and its failure to give the notice was not due to any want of diligence on its part. This provision of the contract must receive a reasonable interpretation, and such a one as will give meaning and effect to the intention of the parties at the time it was made. It was certainly not within the contemplation of the parties to the contract that the contractor might abandon the contract, and the county be powerless to employ other persons to finish the work, unless they could first serve written notice upon the contractor, when the contractor had absconded, and his whereabouts was unknown, and written notice could not be served upon him. All that the county was required to do was to exercise reasonable diligence to serve this notice, and, having done this, its rights under the circumstances to cancel the contract cannot be called in question. To give the contract any other construction would be to leave the county practically at the mercy of a defaulting and absconding contractor.

The guaranty company resists the payment of the items for $115 and $90 upon the ground that the contract provides that the expense incurred by the county for finishing the work shall be audited and certified by the architect, whose certificate thereof

shall be conclusive upon the parties, and that the architect failed to certify the correctness of these items. The record, however, shows that at a meeting of the building committee and the architect, "for the purpose of auditing and certifying the expense incurred by the county by reason of the abandonment and breach of the contract by Manley," these items, as well as the others in controversy, were audited and certified as provided by the terms of the contract. It is true that this certification is not signed by the architect, but it states on its face that the architect was present and that the purpose of the meeting was to ascertain and certify in the manner provided in the contract the expense the county had incurred by reason of Manley's failure to comply with his contract; and this in our judgment must be considered as a substantial compliance with the requirement of the contract in respect to the certification of claims by the architect. There is no evidence to support the guaranty company's contention that the items of $115 and $90 were paid by appropriation by the county of property owned by Manley.

Upon the whole case we are of opinion that on the appeal of the United States Fidelity & Guaranty Company the judgment must be affirmed, and on the appeal of Allen county the judgment must be reversed, with directions to enter a judgment in favor of the county against the United States Fidelity & Guaranty Company for $3,132.37, with interest from January 27, 1904; and it is so ordered.

Petition for rehearing by appellee overruled.