GEORGE A. HORMEL & COMPANY v. AMERICAN BOND-
ING COMPANY OF BALTIMORE.[1]

October 28, 1910.

Nos. 16,611—(10).

**Guaranty insurance of building contract — notice of default.**
     The appellant executed a guaranty insurance bond to indemnify the respondent against loss from the failure of the principal in the bond to per-

[1] Reported in 128 N. W. 12.

form on his part the conditions of a building contract to which he and the respondent were parties. The contract reserved the right of the respondent to make changes in the work and order extras in writing, and provided that fifteen per cent. of the contract price should be retained until the work was completed, which was to be done within a time limited. The bond provided that the appellant should be notified of any breach of the contract, or of any act on the part of the principal which might involve loss to the appellant, immediately after the knowledge thereof should come to the respondent. This is an action on the bond to recover the amount paid by the respondent to discharge liens upon the building arising from the failure of the principal to pay for labor and materials. *Held:*

1. While the bond in form resembles a contract of suretyship, it is in effect a contract of insurance, to which the rules of construction peculiar to contracts of suretyship proper do not apply, but to which the rules governing ordinary contracts of insurance are applicable.

2. If a guaranty insurance bond is fairly open to two constructions, one of which will uphold and the other defeat the claim of the insured, that should be adopted which is most favorable to the insured; but the plain intention of the parties cannot be nullified by construction.

3. Where a building contract, the performance of which is secured by a guaranty insurance bond, reserves the right to make changes in the work and order extras in writing without limit, the mere fact that such changes are made and extras ordered verbally, which are audited and allowed by the architect, does not release the bond.

4. The provision of the bond for notice to be given the insurer of any default on the part of the principal which may result in loss immediately after the insured has notice thereof requires that it be given only within a reasonable time in view of all the circumstances. This is ordinarily a question of fact; but if the facts are undisputed, and only one reasonable conclusion can be drawn therefrom, it is the duty of the trial judge to instruct the jury accordingly.

5. It conclusively appears from the undisputed facts in this case, which are stated in the opinion, that notice of the default of the principal was not given to the appellant within a reasonable time, and that thereby the bond was released.

Action in the district court for St. Louis county against American Bonding Company of Baltimore and J. W. Hilliard to recover $6,500 on a bond given to secure the performance of a building contract. The facts are stated in the opinion. The complaint alleged, among other things, full performance by plaintiff of all the terms and

112 M.—19.

conditions of the bond; that defendant as surety was notified in writing and by telegraph of every breach in the contract by Hilliard and of every failure by him to pay claims for labor and material, immediately after the occurrence of any such breach or failure of payment came to the knowledge of plaintiff or its authorized agent, and that all such notifications were given to the surety promptly and in the manner provided by the conditions of the bond. It also alleged that Hilliard was duly adjudged a bankrupt. The substance of the answer is given in the opinion.

The case was tried before Dibell, J., who, at the close of the testimony, denied defendants' motion to direct a verdict in favor of defendants. The jury returned a verdict in favor of plaintiff for $1,-847.96. The defendant company moved that the verdict be set aside and judgment entered in favor of defendants notwithstanding the verdict. The motion was denied. From the judgment entered pursuant to the verdict, defendant company appealed. Reversed and remanded with direction to enter judgment in favor of defendant notwithstanding the verdict.

*Fitzhugh Burns* and *Washburn, Bailey & Mitchell,* for appellant.
*Catherwood & Nicholsen* and *H. B. Fryberger,* for respondent.

START, C. J.

On October 28, 1908, the plaintiff, hereinafter referred to as the owner, entered into a written contract with J. W. Hilliard, hereinafter referred to as the contractor, whereby he was to erect at Duluth a cold storage warehouse for the owner in accordance with the plans and specifications therefor which were a part of the contract. The contract price was $19,500, in consideration of which the contractor undertook to furnish all materials and perform all the labor for the erection of the warehouse, protect it from liens, and complete it by March 1, 1909. The other provisions of the contract, which are here material, are these:

"No alterations shall be made in the work, except upon written order of the architects. * * *

"The owner reserves the right to make changes in the plans and specifications as may be necessary. If the alterations increase or

decrease the cost, the contract price shall be increased or decreased in fair proportion. The architect is the arbiter of the amount, and it shall be fixed before the work proceeds. * * * Changes will not invalidate the contract nor increase the time within which the work is to be completed, unless it can be shown changes have caused delay. If extension of time is agreed to by the contractor and owner, the contractor is to notify the surety company.

"If the owner desires any extra work, it shall be on written order of the owner or architect. * * * Itemized bills for extras will be presented at the close of the week during which they are performed, and, if approved, paid at the next monthly payment day. * * *

"Monthly payment certificates for eighty-five per cent. of the cost of the work performed and material delivered which is to become a part of the permanent structure shall be issued about the first of each calendar month by the architect or superintendent, on presentation from the contractor of a statement showing the cost of the materials and labor and the unwrought materials delivered. * * *

"The contractor will furnish a bond for thirty-three and one-third per cent. of the amount of his contract to guarantee the faithful performance thereof. The surety company's terms are in no way to invalidate the terms of the contract between the parties hereto."

The appellant, hereinafter referred to as the surety company, gave the required bond, which contained the provisions, with others following: "The owner shall keep, do and perform each and every, all and singular, the matters and things set forth and specified in said contract to be by the owner kept, done and performed, exclusively at the times and in the manner as in said contract specified, provided that said surety shall be notified in writing of any breach of said contract by said principal, or of any act on the part of the said principal, or his agent or employees, which may involve a loss for which the said surety may be liable hereunder, immediately after the occurrence of such act shall have come to the knowledge of said owner."

The contractor did not protect the warehouse from liens, and the owner was compelled to and did pay $7,615.65 in discharge of valid

liens thereon, and thereupon brought this action in the district court of the county of St. Louis against the surety company on its bond to recover the amount so paid. The surety company answered to the effect that the bond was released, for the reasons that changes in the work were made and extras ordered orally, and not on the written order of the owner or architect; that payments were made to the contractor in a manner not authorized by the contract; and, further, that immediate notice was not given to the surety company by the owner of the alleged failure of the contractor to complete the contract within the time limited and to pay his bills for materials and labor.

At the close of the evidence the surety company requested a directed verdict in its favor for the alleged reason, in effect, that upon the evidence the owner was not entitled to recover. The motion was denied, the ruling excepted to, and the issues tendered by the answer submitted to the jury, with instructions, none of which was excepted to at any time. Verdict for the owner in the sum of $1,725.19. No motion for a new trial was made, but a motion was made for judgment in favor of the surety company notwithstanding the verdict, which was denied, and judgment entered upon the verdict, from which this appeal was taken.

The sole question for our decision is whether, upon the record as it stood at the close of the evidence, the surety company was, as a matter of law, entitled to a verdict in its favor. The answer to the question depends upon whether there was any evidence, taking the most favorable view of it for the owner, reasonably tending to show that it was entitled to a verdict in any amount. If there was not, then a verdict should have been directed as requested. If there was, then the requested instruction was rightly refused.

The answer cannot be controlled in any respect by the instructions of the court to the jury in submitting to them the issues made by the pleadings; for the charge of the court as to either the law or facts, although not excepted to, is not the law of the case, as appellant claims. If the refusal to direct a verdict as requested was wrong, because there was no evidence to support any different verdict, the error could not be corrected by any charge which did not in effect grant the request. On the other hand, if there was such

evidence, the ruling was correct, and no instructions in submitting the issues could make it erroneous. The charge, however, is entitled to consideration so far as it indicates the opinion of the learned trial judge as to the law and facts of the case.

In considering the question whether the surety company was entitled to a directed verdict for any of the reasons here urged, we must keep in view the character of contracts of suretyship of corporations organized for the purpose of engaging, for profit, in the business of guaranteeing the fidelity or contracts of a third party, and the rules of construction applicable to their contracts. While such contracts in form resemble those of suretyship, they are in effect contracts of insurance, to which the rules of construction peculiar to contracts of suretyship proper do not apply, but to which the rules governing ordinary insurance contracts are applicable. 32 Cyc. 307. 27 Am. & Eng. Enc. (2d Ed.) 452, §§ 174, 179, and 208; Lakeside Land Co. v. Empire State Surety Co., 105 Minn. 213, 117 N. W. 431; Brandrup v. Empire State Surety Co., 111 Minn. 376, 127 N. W. 424.

The rule of construction applicable to a contract of insurance, in cases where, as in this one, the legislature has not prescribed a standard policy, is settled to the effect that if there is any ambiguity in the language of a condition, or it is fairly open to two constructions, one of which will uphold and the other defeat the claim of the insured, that should be adopted which is most favorable to the insured. The rule of strict construction against the insurer and the liberal one in favor of the insured must prevail under such circumstances. If, however, the terms of the contract be clear, and not fairly susceptible of two constructions, an ambiguity cannot be assumed, and the plain intention of the parties nullified by construction. Loy v. Home Ins. Co., 24 Minn. 315, 31 Am. Rep. 346; American Surety Co. v. Pauly, 170 U. S. 133, 18 Sup. Ct. 552, 42 L. ed. 977.

1. This brings us to the first reason urged why it was error for the court not to direct a verdict for the defendant, namely, that the bond was released by a change in the contract by an unauthorized ordering of extras. The only basis for this claim found in the record is that changes were made in the work and extras ordered

amounting in value to $1,804.39. Those ordered in writing amounted only to $442.80; but there was evidence tending to show that the whole thereof was audited and allowed by the architect before payment. The contract expressly reserved the right of the owner to make such changes and order extras without limit.

In this respect this case differs from that of Norwegian E. L. B. C. v. United States F. & G. Co., 81 Minn. 33, 83 N. W. 487. The right to make changes and to order extras being expressly reserved by the contract, a failure to give a written order for them could in no event prejudice the insured or release the bond to any greater extent than the value of the extras ordered orally; for delay or increased risk, if any, due to the increase in the amount of work to be done would be the same, whether or not the order was in writing. This seems to have been the view of the trial judge in denying the motion for a directed verdict, for the jury were instructed, in effect, that the owner could not recover for payments for extras which were ordered orally. The evidence shows that, eliminating such payments, there would be at least a substantial balance which the owner was compelled to pay by the default of the contractor.

It follows that the surety company was not entitled to a directed verdict for the first alleged reason urged, even if the construction of the trial court of the contract as to extras be accepted. It is not, however, necessary to rest this conclusion alone upon the consideration stated; for if a building contract, the performance of which by the contractor is secured by a bond of guaranty insurance, reserved the right of the owner to make changes in the work and order extras in writing without limitation, the mere fact that such changes are made and extras ordered verbally, but the architect audits and allows the amount thereof before payment, does not release the insurer. Brandrup v. Empire State Surety Co., supra; Smith v. Molleson, 148 N. Y. 241, 42 N. E. 669; Cowles v. United States, 32 Wash. 120, 72 Pac. 1032, 98 Am. St. 838.

2. It is also urged that the surety company was entitled to an instructed verdict for the alleged reason that the owner made payments to the contractor in a manner not authorized by the contract; that is, the owner failed to retain fifteen per cent. of the cost of the

work performed and materials delivered until the completion of the contract. The trial judge submitted to the jury the question whether the owner failed so to retain such percentage, and in case they found an overpayment the amount thereof should be deducted from any amount the owner would otherwise be entitled to recover. It is evident that this instruction was given upon the basis that the question whether there was any overpayment during the progress of the work was made by the evidence a question of fact, and that if there was it released the bond pro tanto only. It was held in the case of Simonson v. Grant, 36 Minn. 439, 31 N. W. 861, that such an overpayment would release the surety absolutely. That case, however, was not, as is this case, one of guaranty insurance, and the rule of strict construction was applied.

It would seem to follow logically, from the rule of construction applicable to guaranty insurance, that any overpayment would release the surety company pro tanto only. However this may be, we are of the opinion that the question whether there was an overpayment was made one of fact by the evidence. The contract provided for the payment of eighty-five per cent. of the cost of work performed and unwrought materials delivered. This provision, construed without reference to other provisions of the contract, would extend the eighty-five per cent. to all work performed and materials furnished as extras. But the time and manner of payment for extras was specifically provided for by another clause of the contract, to the effect that they should be paid for at the next monthly payment day after they were furnished and approved. Therefore, in determining whether the evidence is conclusive that more than the eighty-five per cent. was paid before the completion of the contract, the amount paid for extras must be excluded, and the fact kept in mind that payment of eighty-five per cent. of the cost of work performed and unwrought materials delivered was authorized by the contract. Graves v. Merrill, 67 Minn. 463, 70 N. W. 562. The burden of establishing a breach of this condition of the contract was upon the surety company. Taking the most favorable permissive view of the evidence for the owner, it cannot be held as a matter of law that

there were any overpayments made to the contractor during the progress of the work.

3. The last reason urged why the surety company was entitled to an instructed verdict is the alleged failure of the owner to give the surety company notice of the failure of the contractor to complete the contract within the time limited and of his failure to pay bills for work and materials furnished. The bond provided that the owner should notify in writing the surety company of any breach of the contract by the contractor, or of any act on his part "which may involve a loss for which the said surety may be liable hereunder, immediately after the occurrence of such act shall come to the knowledge of said owner." The object of requiring notice to be given of the contractor's default which may involve loss was to enable the surety company seasonably to take such practicable action as might prevent or minimize loss by reason of the default, and it is not to be strictly construed for or against either party, but reasonably as to both. So construing it, it is clear that the provision for immediate notice does not require notice to be given instantly upon learning of the default, but that it should be given within a reasonable time in view of all the circumstances. Fidelity & Deposit Co. v. Courtney, 186 U. S. 342, 22 Sup. Ct. 833, 46 L. ed. 1193.

The general rule is that the question of reasonable time is one of fact, and must be submitted to the jury with proper instructions; but when the facts are undisputed, and only one reasonable conclusion can be drawn therefrom, it is the duty of the trial judge to instruct the jury accordingly. Dunnell, Trial Book, § 206; Cochran v. Toher, 14 Minn. 293 (385); Roberts v. Mazeppa Mill Co., 30 Minn. 413, 15 N. W. 680; Warder v. Bowen, 31 Minn. 335, 17 N. W. 943.

Was the question in this case one of law? The answer depends upon a consideration of the undisputed evidence and admitted facts relevant thereto, which are, briefly stated, these: The work was to be completed by March 1, 1909. The general contract on that day was not entirely completed, as there remained work to the amount of $500 to be done, besides extra work done after that date amounting to over $1,400. On March 6 the contractor asked for an esti-

mate of $3,500 to pay bills, which was allowed and paid to him on March 15, but he used the amount to pay bills on other contracts on which the surety company had risks. On April 6 the contractor presented a bill for extras in the sum of $1,804.39, which was paid April 16. On April 7 suit was brought against the contractor by a materialman to recover some $1,500, the value of materials which were furnished and used in the construction of the warehouse, and the owner was garnished. This was one of the claims for the payment of which an estimate was requested and allowed on March 6. The owner, upon being garnished, at once communicated with the contractor with reference to the matter, who, on April 13, replied to the effect that the claim made in the case in which the owner had been garnished was excessive in the sum of $400, and, further, that he would be cramped for money with which to meet his pay rolls and other obligations, and he would like to have the amount of the bill for extras paid. The owner also consulted a commercial agency, and received a favorable report as to the contractor's solvency. The bill for extras, $1,804.39, was paid April 16. The owner, however, gave the surety company no notice of the default of the contractor until April 27, at or about which date liens were filed against the warehouse and the contractor went into bankruptcy. The trial court submitted to the jury the question whether this notice was given within a reasonable time under all the circumstances.

The fact that the contract was not fully completed within the time limited and no notice given did not release the bond, for no claim for damages for failure to complete the warehouse on time is made by the owner against any one. Lakeside Land Co. v. Empire State Surety Co., 105 Minn. 213, 117 N. W. 431. Nor was the bond released by the mere fact that the owner made payments to the contractor after it knew that he was not applying the money paid him under the contract to the payment of bills for labor and materials furnished for the warehouse, for it was bound to make payments as provided by the contract. American Surety Co. v. Board of Commrs. of Waseca County, 77 Minn. 92, 79 N. W. 649. Such facts, however, are relevant and weighty in the consideration of the question whether the notice was given within a reasonable time under all the cir-

cumstances. The fact that the owner, upon being garnished, made an investigation, instead of giving the notice, is not of special significance; for the very purpose of the notice was to enable the surety company to investigate, exercise its judgment, and take steps to avert the threatened loss. The owner could not speculate upon the probabilities of loss, but was bound to give the notice as required by the contract.

Upon a consideration of the undisputed evidence and admitted facts, we are of the opinion, and so hold, that it conclusively appears therefrom that the owner did not within a reasonable time give the surety company notice of the default and acts of the contractor to which we have referred, and that for this reason the surety company was entitled to a directed verdict. Therefore the judgment herein must be reversed, and the case remanded, with direction to the district court to grant appellant's motion for judgment notwithstanding the verdict.

So ordered.

JAGGARD, J.
I concur in the conclusion.