THE YOUNG MEN'S CHRISTIAN ASSOCIATION, OF SA-LINA, *Appellee,* v. A. H. RITTER et al., Partners, etc., et al. (THE UNITED STATES FIDELITY AND GUARANTY COMPANY, *Appellant*).

No. 18,326.

SYLLABUS BY THE COURT.

1. BUILDING CONTRACT—*Payments to Contractor—"Final Payment" Construed.* A contract for the erection of a building contained a clause which, after reciting the whole sum to be paid for work and materials, provided "that such sum shall be paid by the owners to the contractors, in current funds, and only upon the certificates of the architects as follows: on or before the first of every month the architects shall make written estimates of all work and material furnished on the contract during the preceding thirty days and eighty per cent of same shall be paid the contractors by the owners when presented. The final payment shall be made within ten days after the completion of the work included in this contract, and all payments shall be due when certificates for the same are issued." *Held,* that "the final payment" referred to the twenty per cent of the amount of the estimates after the eighty per cent had been paid.

2. —————— *Indemnity Bond—Failure to Retain Required Percentage—Surety Released.* A bond of indemnity was executed by a surety company against pecuniary loss resulting from the failure of a contractor to comply with the terms of a building contract. The bond referred to the contract and contained a condition that no liability should attach to the surety unless the owner should give notice to and obtain the consent of the surety before making the final payment provided for in the contract. *Held,* that the failure to retain the required percentage discharged the surety to the extent of the premature payments.

Appeal from Saline district court.   Opinion filed July 5, 1913.   Reversed.

*Z. C. Millikin,* of Salina, for the appellant.

*C. W. Burch,* and *B. I. Litowich,* both of Salina, for the appellee.

The opinion of the court was delivered by

PORTER, J.:   The question to be determined in this case is whether a bond given by a surety company guaranteeing the faithful performance of a contract for the erection of a building is discharged by the failure of the owner to retain the final payment provided for in the contract until the completion of the building and until the bonding company has consented thereto.

The defendant is a corporation engaged in writing surety bonds for compensation.   In November, 1909, A. H. Ritter & Son, builders, entered into a written contract with the Young Men's Christian Association of Salina (herein referred to as the association) for the construction of an association building at a cost of $34,600.   The contract was executed in duplicate, and a copy with exhibits showing the plans and specifications was submitted to the bonding company, and in December, 1909, the company executed its bond for which it was paid a premium.   The building was finally completed, except as to a few minor details, in the fall of 1910.   The contractor defaulted in payment of certain claims for material and labor, and some of the subcontractors filed liens.   The association brought suit on the bond to recover damages for the breach of its conditions.   The jury returned a verdict for the association and also made findings of fact.   The defenses were raised by a demurrer to the evidence, by a motion for a directed verdict, and a motion for judgment on the findings.

The building contract provided, among other things,

that the building was to be erected according to plans and specifications prepared by a firm of architects at Salina, and under their direction, and that they should construe the meaning of the plans and specifications. During the progress of the work a dispute as to whether the basement walls should be 21 or 25 inches in thickness arose between the association and the architect, Smith, who acted for his firm, which resulted in his resignation. The association thereupon substituted one Barnes, its secretary, who from that time acted as superintendent of construction. He was without experience as an architect or builder, and his substitution without notice to or knowledge of the bonding company is one of the defenses pleaded in the answer and relied upon at the trial. Another defense is that certain material alterations in the plans were made without the knowledge or consent of the surety. The third defense is that the required percentage of money earned by the contractor was not retained by the association as required by the bond, and that the failure to comply with this condition discharged the surety. From our view of the case it is not deemed necessary to consider any of these defenses except the last.

In respect of this defense the association makes the contention, first, that the provision in the contract whereby it was to pay eighty per cent of the written estimates of all work and material for thirty days preceding the first of each month does not in so many words say that twenty per cent should be retained, or that the final payment mentioned should be twenty per cent of such estimates; and second, that the provision was solely for its benefit and not that of the surety, and moreover was not a provision prohibiting it from making payment in full at any time it saw fit to do so; but on the contrary it was intended by the provision that it should be wholly optional with the association to retain part of the payments or to pay the whole sums due the contractors for any work or

material furnished "when certificates for the same" were issued.

As to the first contention we think it is clear that the contract provision for the payment of eighty per cent of the estimates of material and work furnished contemplated that twenty per cent might be retained as the "final payment," and that the only reasonable construction to be given to the words "final payment" is that they mean twenty per cent, that is, the percentage remaining due after the payment of the eighty per cent mentioned.

Article 9 of the contract reads:

"It is hereby mutually agreed between the parties hereto that the sum to be paid by the owners to the contractors for said work and materials shall be thirty-four thousand six hundred ($34,600.00) dollars, subject to additions and deductions as hereinbefore provided, and that such sum shall be paid by the owners to the contractors, in current funds, and only upon the certificates of the architects, as follows: On or about the first of every month the architects shall make written estimates of all work and material furnished on the contract during the preceding thirty days, and eighty per cent of same shall be paid the contractors by the owners when presented. The final payment shall be made within ten days after the completion of the work included in this contract, and all payments shall be due when certificates for the same are issued."

The bond refers to the contract, and the conditions of the bond in respect to the matter under consideration read:

"Now, therefore, the condition of the foregoing obligation is such that if the said Principal shall well and truly indemnify and save harmless the said Obligee from any pecuniary loss resulting from the breach of any of the terms, covenants and conditions of the said contract on the part of the said Principal to be performed, then this obligation shall be void; otherwise to remain in full force and effect in law; Provided,

however, that this bond is issued subject to the following conditions and provisions:

"First: That no liability shall attach to the Surety hereunder unless, in the event of any default on the part of the Principal in the performance of any of the terms, covenants or conditions of the said contract, the Obligee shall promptly, and in any event not later than thirty days after knowledge of such default, deliver to the Surety at its office in the city of Baltimore, written notice thereof, with a statement of the principal facts showing such default and the date thereof; nor *unless the said Obligee shall deliver written notice to the Surety at its office aforesaid, and the consent of the Surety thereto obtained, before making to the Principal the final payment provided for under the contract herein referred to.*

"Second: That in case of such default on the part of the principal the Surety shall have the right, if it so desires, to assume and complete or procure the completion of said contract and in case of such default, the Surety shall be subrogated and entitled to all the rights and properties of the Principal arising out of the said contract and otherwise, *including all sureties and indemnities theretofore received by the Obligee and all deferred payments, retained percentages and credits due to the principal* at the time of such default or to become due thereafter by the terms and dates of the contract."

In their brief counsel for plaintiff (appellee) say:

"Appellant in his brief assumes that the contract and bond required the retention of 20 per cent of the contract price until final settlement was made. Neither the contract nor the bond contains any such recital or provision. Contracts and bonds in other cases may contain such recitals. No provision was made in the contract in this case for the retention of any percentage until final settlement. . . . The language of the contract is '*80 per cent of which shall be paid the contractors by the owners,*' and is not as counsel assumes, '20 per cent shall be retained by the owners.' And the contract further provides that 'all payments shall be due when certificates for the same are issued.' These are the only provisions in either contract or bond concerning payment or retention of any per cent."

In *O'Neill v. Title Guaranty & Trust Co.,* 191 Fed. 570, the contract provided:

"Payments to be made on the first day of each month in the following manner. Ninety per cent of the amount of labor and material in place in said building, and fifty per cent of the amount of material on the ground, the final payment to be made when the building is fully completed to the satisfaction of the architect." (p. 571.)

The court of appeals for the sixth circuit approved the holding of the trial court, which was stated in the following language:

"I think the parties contemplate, in such a contract, that at least 10 per cent of the contract price shall be found remaining in the final payment to be made; and that, when the owner has paid, on estimates, 90 per cent of the contract price, he should at least *prima facie* treat the remainder as the final payment." (p. 572.)

In *Cowdery v. Hahn and another,* 105 Wis. 455, 81 N. W. 883, the contract provided that payments were to be made from time to time in amounts up to 85 per cent of the value of the material furnished and the labor performed; final payment to be made within thirty days after the contract was fulfilled, all payments to be made upon written certificates. It was construed as meaning that only 85 per cent was to be paid during the progress of the work, and 15 per cent after the contract was fulfilled, and that the payment of the entire contract price when $275 of the work remained to be done, released the surety, who in that case was a private individual and not a surety company.

As before stated, we think the only reasonable construction of the language of the building contract is that the "final payment" mentioned was the twenty per cent remaining after the payment of eighty per cent of the amount of the estimates. It obviously could not have been intended to refer to the amounts that happened to remain unpaid to the contractor, or to

22—90 KAN.

subcontractors on claims for labor and material at the time the building was completed. There is some conflict in the authorities upon the question of whether a provision of this character in a building contract is solely for the benefit of the owner or for the mutual benefit of the owner and the surety. The bond refers to the contract and the authorities are well settled that the two must be construed together. They constituted one transaction. The contract for the erection of the building was entered into first. Before any steps were taken under the contract a copy of it was furnished to the bonding company and an application made for indemnity. The bond guarantees the faithful performance of the contract upon certain conditions, among which is the condition that no liability shall attach to the surety unless the association "shall deliver written notice to the surety," and the consent of the written notice to the surety," and the consent of the surety obtained before making "the final payment provided for under the contract herein referred to." There would be nothing upon which this carefully worded provision for the protection of the surety could operate if, as contended, the plantiff had the right to pay out the entire contract price before the completion of the building and without notice to the surety. In our opinion the provision in the contract that "all payments shall be due when certificates for the same are issued" can not be construed to destroy the meaning of "the final payment," but it must be read together with what precedes it in the same article in reference to the final payment. That part of the contract reads:

"On or before the first of every month the architects shall make written estimates of all work and material furnished on the contract during the preceding thirty days and eighty per cent of same shall be paid the contractors by the owners when presented. The final payment shall be made within ten days after the completion of the work included in this contract, and

all payments shall be due when certificates for the same are issued."

There is no ambiguity. The words "all payments shall be due when certificates for the same are issued," refer to the eighty per cent of each estimate, and this provision is clearly for the benefit of the contractor. In the first instance, before there was any surety, the provision in the contract authorizing the owner to retain twenty per cent as a final payment was solely for the benefit of the association. As between it and the contractor the association might waive the right to retain the amount due above the eighty per cent and pay the entire amount of each estimate. Eighty per cent it was obliged to pay when estimates from the architects were presented. And all such payments were due to the contractor as a matter of right "when certificates for the same" were issued. When the bonding company made its contract with the association the provision for retaining all sums due upon estimates above the eighty per cent became a condition which the association, as between itself and the bonding company, was obliged to fulfill. The contract of suretyship expressly provides that the surety shall not be liable unless upon written notice to the surety its consent be obtained before making final payment, and in case of default there is a provision subrogating the surety to all the rights of the principal arising out of the contract for the erection of the building, including all deferred payments and "retained percentages." The purpose of a provision for retaining a percentage of the money due in contracts of this character has been stated by the courts to be primarily to remove from the contractor the temptation to abandon his work and to furnish an incentive for him to continue until the final completion of the contract.

"The object of reserving such percentages is manifestly to furnish an incentive to the contractor to finish the work, and to secure both the owner and guarantor;

and it has been so often held that a failure on the part of the owner to retain the percentage will release the surety, that little more than a citation of some of the decisions is necessary." (*O'Neill v. Title Guaranty & Trust Co.*, 191 Fed. 570, 573.)

In *Prairie State Bank v. United States*, 164 U. S. 227, 17 Sup. Ct. 142, 41 L. ed. 412, Justice White said:

"That a stipulation in a building contract for the retention, until the completion of the work, of a certain portion of the consideration, is as much for the indemnity of him who may be guarantor of the performance of the work as for him for whom the work is to be performed; that it raises an equity in the surety in the fund to be created; and that a disregard of such stipulation by the voluntary act of the creditor (owner) operates to release the sureties—is amply sustained by authority." (p. 233.)

Counsel for the bonding company concedes that the rules of strict construction applicable to ordinary sureties is not enforced in the case of a bond written by a corporation engaged in the business (*Hull v. Bonding Co.*, 86 Kan. 342, 120 Pac. 544; *Lumber Co. v. Douglas*, 89 Kan. 308, 131 Pac. 563), but contends that the obligation can not be extended beyond the plain meaning of the expressed terms.

In the case of *George A. Hormel & Co. v. American Bonding Co.*, 112 Minn. 288, 128 N. W. 12, the supreme court of Minnesota had the same question before it. After deciding that bonds of this character, though resembling contracts of suretyship, are in effect contracts of insurance to which the rules of construction peculiar to contracts of suretyship proper do not apply, the court laid down the following general rule:

"If a guaranty insurance bond is fairly open to two constructions, one of which will uphold and the other defeat the claim of the insured, that should be adopted which is most favorable to the insured; but the plain intention of the parties can not be nullified by construction." (Syl. ¶ 2.)

The Y. M. C. A. v. Ritter.

The jury had found that there was no failure to retain. The court, while adopting and approving the liberal rule of construction of such contracts, reversed the judgment on the ground that the owner had failed to comply with a provision of the contract requiring him within a reasonable time to notify the company of the contractor's default.

The case is reported in 33 L. R. A., n. s., 513, with a quite exhaustive note in which the author says that the case is sustained by the overwhelming weight of authority, and that if a contract of this kind is ambiguous or fairly open to two constructions it will be construed favorably to the assured. The Minnesota court in the case just quoted from approves the *pro tanto* rule as applied to the provision requiring that a percentage of the cost price be retained until the completion of the building. This is in accord with the rule that is frequently adopted in construing ordinary insurance policies. The *pro tanto* rule, which is followed by some of the courts, regards the failure to retain the required percentage as releasing the surety to the extent of the unauthorized payment. Other courts, which follow the same strict interpretation of contracts of this kind as in cases of volunteer or gratuitous sureties, go to the full extent of holding that the failure to retain the required percentage will discharge the surety absolutely and in any event.

The two lines of authorities fairly illustrate the application of the two rules of construction. In the Minnesota case, *supra,* the court approved an instruction of the trial court submitting to the jury the question of fact whether the owner failed to retain the percentage, and this upon the theory that if there was a failure to retain "it released the bond *pro tanto* only." On this branch of the question the court said:

"It was held in the case of *Simonson v. Grant,* 36 Minn. 439, 31 N. W. 861, that such an overpayment would release the surety absolutely. That case, how-

ever, was not, as is this case, one of guaranty insurance, and the rule of strict construction was applied. It would seem to follow logically, from the rule of construction applicable to guaranty insurance, that any overpayment would release the surety company *pro tanto* only." (112 Minn. 295.)

No reason is suggested why a surety company may not by its contract require that the usual percentage of the building cost shall be retained until the building is completed and until it has notice of the default of the contractor and consents to the final payment. We are impressed with the reason and justice of the rule that a surety company, although engaged in the business for profit, should be released from liability to the extent of any payments made in excess of the amount or in advance of the time expressly provided in the bond itself. To hold otherwise would require the courts to make for the parties a new contract and one not contemplated at the time the contract sued upon was entered into.

The following authorities are in point on the general proposition: *Backus v. Archer,* 109 Mich. 666, 67 N.W. 913; *Kiessig v. Allspaugh,* 91 Cal. 231, 27 Pac. 655, 13 L. R. A. 418; *County of Glenn v. Jones,* 146 Cal. 518, 80 Pac. 695; *Fidelity & Deposit Co. v. Agnew,* 152 Fed. 955, 82 C. C. A. 103; *Shelton v. American Surety Co.,* 131 Fed. 210, 66 C. C. A. 94; and as to failure to comply with a condition requiring notice to the surety, see *Knight & Jillson Co. v. Castle,* 176 Ind. 97, 87 N. E. 976, 27 L. R. A., n. s., 573, and *George A. Hormel & Co. v. American Bonding Co.,* 112 Minn. 288, 128 N. W. 12, 33 L. R. A., n. s., 513.

The case of *Fidelity & Deposit Co. of Maryland v. Robertson,* 136 Ala. 379, 34 South. 933, cited by plaintiff, appellee, in which it was held that a provision of the kind in question is solely for the benefit of the owner of the building, has been overruled by the case of the *First National Bank v. Fidelity & Deposit Co.,*

145 Ala. 335, 40 South. 415. In the latter case the Alabama court holds that the failure to comply with a condition in the building contract which provided that the owner *might* retain payment of certain classes of claims, discharged the surety. The case is reported in 5 L. R. A., n. s., 418, with a note where many cases from courts which adhere to the rule of absolute discharge of the surety by the failure to retain required percentages are cited, as well as some adhering to the rule that the surety is released only to the extent of the excess payment.

In the case at bar there is little room for the application of the *pro tanto* doctrine, because it appears that a compliance with the requirement would have relieved the surety of all liability. The amount for which the jury found the surety company liable is $1423. The contract price was $34,600; extra work, $141. The association retained the sum of $5056. If it had retained $6779, which was twenty per cent of the contract price of the building, it would have had on hand more than sufficient to pay the full amount of the judgment obtained against the surety company. The contract of the bonding company is quite different from those in many of the decided cases. The parties saw fit to provide expressly in the bond that no liability should attach to the surety company "unless the said Obligee shall deliver written notice to the Surety at its office aforesaid, and the consent of the Surety thereto obtained, before making to the Principal the final payment provided for under the contract herein referred to."

There is no ground for a claim of ambiguity in the phraseology in which this condition is expressed, nor, as already observed, is there any basis for a misunderstanding of the meaning of the words "final payment," for they are defined in the building contract to which

the bond refers.   3 Words & Phrases, p. 2803, defines a final payment as follows:

"A 'final payment' is a last payment.   Where a contract provided that a person might retain out of the money payable to the contractor 25 cents per lineal foot for the work done, which money was to be retained for six months, and was to be paid over at the expiration thereof, provided that the work should be in good order, such 25 cents per lineal foot is evidently the last or final payment, instead of the payment made within 30 days after the acceptance of the work. (*Johnson v. City of New York,* 1 N. Y. Supp. 254, 255, 48 Hun, 620.)"

We fully recognize the distinction between ordinary sureties and insurers. (*Hull v. Bonding Co.,* 86 Kan. 342, 120 Pac. 544; *Lumber Co. v. Douglas,* 89 Kan. 308, 131 Pac. 563.)   There can be no question of the rule in the case of an ordinary volunteer surety.   Where a builder has the privilege, as between himself and the contractor, of withholding a percentage of the estimates as the work progresses, as security for the performance of the contract, he is under an obligation to exercise the privilege for the benefit of a volunteer surety. (32 Cyc. 223; 40 Cent. Dig., tit. Principal and Surety, § 284 *et seq.*)   There are cases holding that this rule is not changed by the fact that the surety has received a compensation for executing the bond. (*National Surety Co. v. Long,* 79 Ark. 523, 96 S. W. 745.)

However, from the cases we have cited in this opinion it will appear that the weight of authority supports the doctrine that a surety who is compensated for the risk he assumes is not entitled to the benefit of that rule, and can require the withholding of the percentage only when, as in this case, he has specifically contracted for it.

We have carefully examined every case cited by plaintiff, appellee, on this branch of the case.   In none of them was there a provision in the bond declaring that no liability should attach to the surety if the

owner failed to retain the required percentage. This difference alone is sufficient to deprive the decisions of any force as authority in the present case. In support of the doctrine that the right under the terms of contract to retain twenty per cent of the contract price is exclusively for the benefit of the owner, the plaintiff, in addition to the case overruled (136 Ala. 379) by the Alabama court, cites *Meyers v. Wood,* 26 Tex. Civ. App. 591, 65 S. W. 671. In the opinion in that case the civil court of appeals of Texas cites no authorities, and dismisses the proposition with the mere statement that the right to retain the required percentage was exclusive to the owners, which they might exercise or not, as they saw fit, and their failure to do so would not of itself release the sureties. Another case cited is *United States F. & G. Co. v. Tustees of Baptist Church,* (Ky. 1907) 102 S. W. 325. There the Kentucky court of appeals held that where excess payments were necessarily made in order to satisfy claims of laborers who otherwise would have asserted liens on the property from which the surety was bound to save the obligee harmless, such payments did not constitute a breach of the building contract sufficient to relieve the surety. No authorities are cited, and the decision turns on the liability of the surety to pay the identical claims advanced by the owner. In the case of *Wolf v. Ætna Indemnity Co.,* 163 Cal. 597, 126 Pac. 470, the evidence was held sufficient to justify a finding that there were no premature payments. In *American Surety Co. v. Scott & Co.,* 18 Okla. 264, 90 Pac. 7, the contract authorized the retention of 20 per cent. The bond required the owner to retain 15 per cent until the building was completed. It was held that there was no violation of the bond in the payment of all sums up to 15 per cent.

In the case of *Drumheller v. American Surety Co.,* 30 Wash. 530, 71 Pac. 25, the question of premature payments was neither involved nor discussed. In *Peo-*

*ple's Lumber Co. v. Gillard,* 136 Cal. 55, 68 Pac. 576, and *Ætna Indem. Co. v. Waters,* 110 Md. 673, 73 Atl. 712, the question of premature payments was not involved. In *Blauvelt v. Kemon,* 196 Pa. St. 128, 46 Atl. 416, there was no provision for retaining a percentage, and besides it was found that there was no overpayment. In *Chapman v. Eneberg,* 95 Mo. App. 128, 68 S. W. 974, the 15 per cent was paid according to the express provisions of the contract. Moreover, in the opinion the court expressly approves the *pro tanto* doctrine in a case of failure to comply with a requirement in the bond that a percentage be retained. In *Illinois Surety Co. v. Garrard Hotel Co.,* (Ky. 1909) 118 S. W. 967, the only question remotely connected with this was upon what sum the 25 per cent should be computed, and it was held that the original contract price plus the extras should be considered. In *St. John's College v. Ætna Indemnity Co.,* 120 N. Y. Supp. 496, it was held that the payment was not premature because the amount paid did not exceed 80 per cent of the work actually done at the time. In the case of *Allen County v. U. S. Fidelity & Guaranty Co.,* 122 Ky. 825, 93 S. W. 44, it was held that the surety was not discharged because estimates were not certified by the architect, the certificate stating that he was present at the meeting of the building committee for the purpose of ascertaining and certifying in the manner provided by the contract. In *De Mattos v. Jordan,* 15 Wash. 378, 46 Pac. 402, the owner accepted an order drawn by the contractor for payment of brick and took it out of the next estimate; and also advanced money to pay for material which was in possession of the railway company and without which the work could not proceed. The amount so paid was taken out of the next estimate. These were held not to be premature payments.

We therefore conclude that the bond and the contract are to be construed together, and that the provision in the latter authorizing the association to retain

the balance after paying 80 per cent of the estimates required the association, as between itself and the surety company, to retain it; and that the failure to retain the percentage until notice to and consent of the surety, when by complying with the condition the association would have had in its hands a sum sufficient to satisfy the claims for which the findings show the surety company was liable on the bond, discharged the surety company from all liability.

It follows that the judgment is reversed and the cause remanded with directions to enter judgment for the appellant.

JOHNSTON, C. J., BURCH and BENSON, JJ., dissenting.