No. 19,515.

SCHOOL DISTRICT NO. 3 OF FORD COUNTY, *Appellee*, v. C. W. DELANO et al. (THE UNITED STATES FIDELITY & GUARANTY COMPANY OF BALTIMORE, MARYLAND, *Appellant*).

SYLLABUS BY THE COURT.

1. BUILDING CONTRACT—*Indemnity Bond—Withholding Final Payment— Terms of Bond.* A guaranty company insuring the performance of a building contract for profit is not entitled to insist upon the withholding of the final payment, or that a percentage of the contract price shall be retained until the completion of the building, unless it is specifically provided for in the contract with the guaranty company.

School District v. DeLano.

2. SAME—*Material Damage Must be Shown.* In any event, such company has no right to complain of the time and manner in which payments are made by the owner unless it has been damaged in a material way by a departure from the provisions of the contract and of the obligation which it assumed.

3. SAME—*Alterations in Plans—Guarantor Not Released.* The guaranty company is not entitled to a release from its obligation because of alterations in the plans and specifications which are not unreasonable, where the contract specifically provides that alterations may be made.

4. SAME—*Default of Contractor—Liability of Guaranty Company.* The guaranty company is liable for the principal debt which arises from the nonperformance of the contract to the amount of the penalty named in its obligation, and in addition to that it may be held for interest on such debt from the time it should have been paid, although the amount of the principal and interest should exceed the penalty of the bond.

5. SAME—*Liquidated Damages.* Where the contractor agrees to become liable for liquidated damages at a certain rate per day for failure to complete the building at a fixed time, and he fails to finish it at the time agreed upon, and also abandons the work before completion, and the guaranty company does not, upon notice, complete the building itself, it devolves upon the owner to do so, and to commence the work within a reasonable time after the default and abandonment, and if he does so and prosecutes it with reasonable diligence to completion, he is entitled to liquidated damages from the time stipulated for completion until the building is finished, but he can not enhance his damages by unreasonable delay in taking up the work of completion or in carrying it on.

6. SAME—*Architect's Estimate—Not Binding on School District.* An indefinite and rough estimate by the architect of the cost of completing the abandoned work, made in a letter addressed to the guaranty company, which was not accepted or acted upon by it, is not conclusive on the owner as to the extent of recovery.

7. SAME—*Passion or Prejudice of Court Not Shown.* The evidence does not disclose that the court was actuated by passion or prejudice in making the findings herein on which its judgment was based.

Appeal from Ford district court; GORDON L. FINLEY, judge. Opinion filed November 6, 1915. Modified.

*W. G. Fairchild, John S. Simmons,* and *H. S. Lewis,* all of Hutchinson, for the appellant.

*L. A. Madison,* and *Carl Van Riper,* both of Dodge City, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action brought by School District No. 3 of Ford county against The United States Fidelity and Guaranty Company of Baltimore, Maryland, and C. W. DeLano to recover for the failure of DeLano to complete a contract for the erection of a schoolhouse. On June 25, 1909, DeLano contracted with the board of education to furnish the necessary labor and material and complete by December 15, 1909, an eight-room school building in Spearville for the sum of $15,000 upon the condition that he would pay $5 a day as liquidated damages if the building should not be completed within the agreed time, and the guaranty company gave bond in the sum of $5000 conditioned upon the faithful performance of the contract. It was an ordinary building contract and provided for the payment of ninety per cent of the contract price in installments upon estimates made by the architect and general superintendent. It also provided that work mentioned or shown in either the specifications or plans only should be considered as if in both. Provision was also made for additions or deductions and for alterations deemed to be proper or necessary. DeLano entered upon the work. He was paid, upon the architect's estimates, the sum of $12,595.73 and $1458.73 additional was paid by the board to claimants upon DeLano's orders. The time for completion of the building was extended by agreement to April 1, 1910, and notice of the extension was given the guaranty company, but in a letted dated December 21, 1909, the company advised that such a notice was unnecessary. DeLano continued work upon the school building until July 1, 1910, when he abandoned the work, locked the door and turned the key over to a member of the school board. The school board notified the guaranty company of DeLano's abandonment of the work when they learned that he was not coming back, and on October 6, 1910, attorneys for the board wrote the company in detail giving an estimate that the cost of completing the building would be from $1500 to $2000 and advising of a mechanic's lien of nearly $2000. The company took no steps to complete the building, and in fact made no response to the notices of the contractor's default, and the board engaged the architect to get some one to oversee the completion of the build-

ing. Work was not begun by the board until November 21, 1910, and it was finally completed on February 1, 1911. The case was tried without a jury and the court found the total sum due the school district to be $6379.84, including $1594.35 for liquidated damages for the delay, and rendered judgment against DeLano for that sum and against the guaranty company for $5868.08. The company appeals.

The defendant asks to be released from liability upon its bond because more than ninety per cent of the work done and material furnished had been paid to the contractor as the work progressed. The only provisions in the contract respecting the time and manner of payment were that ninety per cent of the estimates made by the architect should be paid to the contractor on or about every thirty days and all extras and the contract price were to be paid within ten days after the contract was fulfilled and accepted. It appears that payments were not made directly to the contractor in excess of ninety per cent of the estimates of the architect, but the board did pay legal claims for work done and material furnished in the erection of the building to the extent of $1458.73, which added to that paid to the contractor made a sum in excess of ninety per cent of the estimates. The stipulation requiring the owner to pay ninety per cent of the estimates as the building progressed is available to the surety where it is specifically provided for in the bond given by the surety. The contract did not stipulate for the retention of any part of the contract price until the building was completed and accepted, and there was no provision in the bond given by the surety company which specifically provided that a percentage of the estimates should be retained by the owner until the contract was carried out. As the company was insuring for profit it was not entitled to insist on the withholding of a final payment or that a particular percentage of the contract price should be retained since it was not specifically provided for in the bond which it gave. (The Y. M. C. A. v. Ritter, 90 Kan. 332, 133 Pac. 894.) Aside from this consideration it appears that the claims paid by the board to others than the contractor were for material furnished and work done in the erection of the building. They were reasonable and proper charges which had to be paid and which might have become liens upon the building if payment had not been made.

Being valid claims it was immaterial to the company whether they were paid when due or withheld until the end, as the company had obligated itself to the owner to pay all legal claims for material and labor up to the penalty in its bond, and therefore it sustained no loss because of the time and manner in which the payments were made. In any event it has no right to complain of the time and manner of payments unless it has been damaged by a departure from the terms of the contract and of the obligation which it assumed. (*The Y. M. C. A. v. Ritter,* supra; *School District v. McCurley,* 92 Kan. 53, 142 Pac. 1077; *Republic County v. Guaranty Co.,* ante, p. 255, 150 Pac. 590; *Lumber Co. v. Peterson & Sampson,* 124 Iowa, 599, 100 N. W. 550; *Schrieber v. Worm,* 164 Ind. 7, 72 N. E. 852; *United States F. & G. Co. v. Trustees of Baptist Church* [Ky. 1907] 102 S. W. 325.)

Another ground upon which the company claims a release from liability is that alterations were made and some extra work was provided for which was not mentioned in the original contract. It is true that alterations were made which provided for the finishing of the basement and the plastering of a room, amounting to between $500 and $600, but these changes appear to have been such as were within the contemplation of the contracting parties when they agreed that the board might make such alterations as it deemed proper without invalidating the contract. It expressly provided for deviation from the plans and specifications either by additions or omissions, and as the contract the performance of which the company insured authorized alterations, it, in effect, consented in advance to reasonable changes. In view of this provision the company as a compensated surety can not claim a release from its obligation because the changes mentioned were made. (*McLennan v. Wellington,* 48 Kan. 756, 30 Pac. 183; *Risse v. Planing Mill Co.,* 55 Kan. 518, 40 Pac. 904.) There was no demand for arbitration of these additions nor did the absence of it prevent a determination of the necessity and value of them in the trial.

The next complaint is of the allowance of liquidated damages to the extent of $1594.35. The contract, as we have seen, provided for the payment of $5 a day, exclusive of Sundays, as liquidated damages for each day the building was incomplete after the agreed time for completion. The time first fixed

for completion was December 15, 1909, but it was extended by agreement until April 1, 1910, and of this extension the guaranty company was given notice. The contractor abandoned the building on July 1, 1910. Early notice of the abandonment was given to the guaranty company, but it did not respond to the notice nor afterwards take any steps towards the completion of the building. The board finally took possession of the building, and entered upon the work of completion on November 21, 1910, a period of four months and twenty-one days after the contractor's default. In view of the character of the building, the use for which it was designed and the nature of the loss sustained by the delay there is no difficulty in treating the provision as liquidated damages or in holding that $5 a day is a reasonable provision for the failure to complete the contract in time. The board, however, could not increase its recovery by postponing action in taking possession of the building and proceeding with the completion of the work. In *Town Co. v. Leonard*, 46 Kan. 354, 26 Pac. 717, 26 Am. St. Rep. 101, it was held that:

"Where a party seeks redress for the wrong of another, the law requires that he shall do whatever he reasonably can, and improve all reasonable opportunities to avoid the consequences and to lessen the injury." (Syl. ¶ 2.)

No good objection can be made for the allowance of damages from April 1 to July 1, 1910. The board was then entitled to a reasonable time in which to ascertain if the contractor or the guaranty company would proceed with the performance of the contract which they had undertaken. It is not easy to determine just what was a reasonable time, but certainly four and two-thirds months were not required to ascertain the purpose of the contractor and the guaranty company. Having in mind all the circumstances of the case it is deemed that one month and twenty-one days were sufficient for that purpose, and that therefore the damages for three months of that intervening period should be disallowed. As the board proceeded with diligence and dispatch with the completion of the building after undertaking to finish it an award of $5 a day from the time the work was undertaken by the board until its completion on February 1, 1911, was justified.

Complaint is made that the defendant was held liable for rebuilding and refinishing parts of the structure previously erected by the contractor. The company guaranteed faithful performance of the contract, and therefore it is chargeable for defects in the work done by the contractor as well as for the parts contracted for and upon which no work had been done by him. To correct defective construction and make the building conform to the plans and specifications it was necessary to tear out some of the construction which the contractor had made and rebuild it. The replacement of the window lights put in by the contractor and which were unfit was a proper charge against the company. It may be that a part of the injury resulting from rain blowing through broken windows during the delay of the board in commencing work upon the building was not chargeable against the bond, but the injury resulting from the delay is so inconsiderable that it would not affect the amount of recovery against the guaranty company, and no other party is complaining here.

There is nothing substantial in the contention of the defendant that no more should have been charged for the cost of completing the building than was suggested in a statement made by the architect in a letter to the company in November, 1910. The architect did not undertake to give a detailed estimate of the cost of completion and the contents of the letter indicated, that it was not such an estimate as he or any of the parties would rely upon. It was indefinite in amount, and was a mere rough estimate which was not accepted or relied on by the defendant.

Defendant next insists that the allowances made to the plaintiff for the completion of the building were unwarranted and indicate that the court was actuated by passion and prejudice, but an examination of the record does not lead us to that conclusion. Upon what appears to have been competent evidence the court held that the charges for material and labor were reasonable and necessary to the completion of the building and the carrying out of the contract. The computation made by the court in determining the amount paid to the contractor and to those holding valid claims for material and labor furnished has been examined and appears to be substantially correct. We have also examined the accounting

made by the court as to the cost of completion, the deduction of that part of the contract price which was not paid to the contractor, and as to the interest which accumulated, and the result obtained by the court outside of the allowance for liquidated damages appears to be justified by the record. Interest was charged on the amount paid to discharge the lien from the date of payment and on the amount paid out for completion of the building from February 1, 1911, the time when the building was completed. Interest was allowed on the liquidated damages from the completion of the building until the date of judgment. The penalty of the bond is $5000, and that, of course, is the limit of defendant's obligation. It was the amount due which the company agreed to pay upon the contractor's noncompliance with the contract. It became liable for these claims up to the amount of the penalty at the time they accrued and should have been paid by it, and it is chargeable with interest on these claims after that time. It was decided by the supreme court of Iowa that:

"While the debt for which the surety can be held liable is limited by the penalty named in the bond, yet interest may be collected on such debt from the time when it became the surety's duty to pay it, even though the aggregate of principal and interest is more than the penal sum." (*Lumber Co. v. Peterson & Sampson*, 124 Iowa, 599, 607, 100 N. W. 550.)

(See, also, *Burchfield v. Haffey*, 34 Kan. 42, 7 Pac. 548; *Ellyson v. Lord*, 124 Iowa, 125, 99 N. W. 582; 37 Albany Law Journal, 108.)

In respect to the liquidated damages the company is liable for the number of days, Sundays excepted, between April 1, 1910, the agreed time for completion of the building, and July 1, 1910, when the contract was abandoned by the contractor—seventy-seven days; also for the working days from July 1, 1910, to August 21, 1910, the time when it is held the plaintiff should have taken possession and proceeded with the work, amounting to forty-four days; and the defendant is also liable for the time from November 21, 1910, the time when the work was actually begun by the board, until it was completed on February 1, 1911, which, with Sundays excepted, was sixty-three days; making a total of one hundred eighty-four days, and reckoning the damages at the stipulated rate

of $5 a day the principal amount due for liquidated damages was $920. The company was liable for interest on this amount from the time it was due until the rendition of judgment, which is $166.51.

In computing the principal of the debt of the company under the bond it was found that the plaintiff paid out $3295.23, and this with the $2012.12 paid on the lien which had accrued amounted to $5307.35, less that part of the contract price which was not paid, $1215.89, leaving a balance of $4091.46. To this sum should be added $920 as liquidated damages instead of $1350, the amount added by the court, making the total principal debt of the contractor $5011.46 instead of $5441.46, the amount found by the court. The company is only liable for $5000 of the principal debt, but to this sum should be added the interest which has accrued since it became the duty of the company to pay the debt. The amount of the interest, as we have computed it, is $859.66, and therefore the amount of the judgment against the company for principal and interest should be $5859.66, which is only $8.42 less than the amount adjudged by the trial court.

The case will, therefore, be remanded with directions to enter judgment against the company for $5859.66, and when so modified the judgment is affirmed.