No. 38,979

THE FARMERS UNION ELEVATOR COMPANY, a corporation, *Appellee*, v. THE JOHNSON-SAMPSON CONSTRUCTION COMPANY, Incorporated, and THE CENTRAL SURETY AND INSURANCE CORPORATION, *Appellants*.

(258 P. 2d 268)

Opinion filed June 6, 1953.

*James P. Mize*, of Salina, argued the cause, and *C. L. Clark* and *Jason K. Yordy*, both of Salina, were with him on the briefs for the appellants.

*John V. O'Donnell*, of Ellsworth, argued the cause, and *V. E. Danner*, of Ellsworth, was with him on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action on three counts by The Farmers Union Elevator Company, a corporation, against The Johnson-

Sampson Construction Company, Incorporated, the contractor, and the The Central Surety and Insurance Corporation, to recover damages for breach of contract for the building of a grain elevator.

Defendants appeal from orders overruling their separate general demurrers to the separate counts of the petition after having unsuccessfully motioned the petition and from the overruling of their separate demurrers based on the ground several causes of action were improperly joined.

The material parts of the separate counts were:

"2. That on the 14th day of March, 1950, this plaintiff and the defendant, The Johnson-Sampson Construction Company, Inc., entered into an agreement, in writing, together with plans and specifications attached thereto and made a part thereof, of which a copy is hereto annexed and made a part hereof as fully and completely as though the same were set out herein at length, and marked Exhibit 'A'.

"3. That plaintiff has duly fulfilled all the conditions thereof on its part to be done and performed.

"4. That the defendant, The Johnson-Sampson Construction Company, Inc., in order to secure the faithful performance of the aforementioned agreement marked Exhibit 'A', agreed to furnish a good and acceptable bond in the sum of seven thousand two hundred and twenty dollars assuring the plaintiff that the defendant, The Johnson-Sampson Construction Company, Inc., would promptly and faithfully perform said agreement marked Exhibit 'A'.

"5. That on the 27th day of March, 1950, the defendants above named, executed and delivered to the plaintiff herein their bond for the faithful performance of the work provided for in the aforesaid contract marked Exhibit 'A', a copy of which said bond, together with all endorsements thereon is hereto attached, made a part hereof as fully and completely as though the same were set out herein at length, and marked Exhibit 'B'.

"6. That among other things said performance bond marked Exhibit 'B' provided as follows:

" 'Whenever Contractor (Johnson-Sampson Construction Company, Inc.) shall be, and be declared by Owner (plaintiff) to be, in default under the contract, (the owner having performed owner's obligations thereunder), the Surety (The Central Surety and Insurance Corporation) may promptly remedy the default, or shall promptly

" '(1) Complete the contract in accordance with its terms and conditions, or

" '(2) Obtain a bid or bids for submission to owner for completing the contract in accordance with its terms and conditions, and upon determination by owner and surety of the lowest responsible bidder, arrange for a contract between such bidder and owner and make available as work progresses (even though there should be a default or a succession of defaults under the contract or contracts of completion arranged under this paragraph) sufficient funds to pay the cost of completion less the balance of the contract price; but not exceeding, including other costs and damages for which the surety may be liable hereunder, the amount set forth in the first paragraph ($7220). The term

"balance of the contract price", as used in this paragraph, shall mean the total amount payable by Owner to Contractor under the contract and any amendments thereto, less the amount properly paid by Owner to Contractor.'

"7. That the defendant, The Johnson-Sampson Construction Company, Inc., did not fulfill said contract on its part; but on the contrary, erected said elevator building in an unskillful and negligent a manner and of so unsuitable materials, the exact character, nature and kind of which are unknown to plaintiff and for that reason not set out herein in particular; that shortly after its completion the walls of the elevator pit, floor and leg became and are leaky to subsurface waters, to such an extent as to prohibit the use of the same for the purposes intended by the contract marked Exhibit 'A', to the damage of the plaintiff in the sum of $7,220.00.

"SECOND CAUSE OF ACTION

"The plaintiff for its second cause of action against the defendants and each of them, alleges:

"1. That it makes all of that part of its first cause of action, which is not inconsistent with this second cause of action, a part hereof as fully and completely as though the same were again set out herein at length.

"2. That on or about August 21, 1950, defendant, the Johnson-Sampson Construction Company, Inc., represented to the plaintiff that said elevator building described in Exhibit 'A' attached hereto was completed and, the plaintiff thereafter and on August 26, 1950, made final payment under the terms of said Exhibit 'A'. That thereafter in the summer of 1951, the exact date being unknown, while said elevator was in use in the ordinary, usual and customary manner, the said elevator pit commenced to leak from penetration of subsurface water and as a direct result of said leakage of water in said pit, through no fault or negligence of plaintiff, the plaintiff was damaged in loss of wheat by reason of dockage per bushel of wet wheat at terminal market where sold, as follows to-wit: [Here are set forth the amounts of dockage claimed for grain sold between September 18, 1951, and February 27, 1952, in the total sum of $8,131.46.] which said loss aforesaid in the amount of $8,-131.46 plaintiff claims as further damages herein.

"3. That because of said leakage of water as aforesaid, plaintiff has been unable to use said elevator for the storage of wheat in the usual, ordinary and customary manner, that as a direct result thereof, the plaintiff has been forced to store its wheat at terminal elevators, which said storage to date hereof has cost plaintiff the sum of $1,237.35, all of which plaintiff claims as further damages herein.

"THIRD CAUSE OF ACTION

"The plaintiff for its third cause of action against the defendants and each of them, alleges:

"1. That it makes all of those parts of its first and second cause of action, which are not inconsistent with this third cause of action, a part hereof, as fully and completely as though the same were again set out herein at length.

"2. That there is now in said elevator 17,043 bushels of wheat, all of which have been damaged by being wet as a direct result of said leaking elevator pit and as a direct result thereof plaintiff has and will suffer damages in

dockage at the rate of 15¢ per bushel or a total damage by reason thereof, of $2,556.45."

The prayer was for the recovery of $7,220.00, $8,131.46 and $2,-556.45 together with interest and costs.

For present purposes it is unnecessary to set forth the full contract between the owner and contractor together with the detailed plans and specifications or to copy in full the performance bond. We shall, however, set forth such portions thereof as are involved in the present contentions of the parties. Such parts of the contract are:

"Now, THEREFORE, in consideration of the payment hereinafter specified, by the Owner to the Contractor, the Contractor does hereby agree upon the terms and conditions hereinafter stated to be kept and performed, to draft and furnish plans and specifications for said elevator and to furnish construction equipment and to perform construction services hereinafter specified, and Owner does hereby hire Contractor to do so, and Contractor and Owner do further agree: . . . Completion of the job according to the plans and specifications and the handling of grain shall constitute acceptance.

. . . . . . . . . . . . . . . .

"DUTIES OF CONTRACTOR . . .

"To cause said elevator to be constructed in a diligent manner in accordance with the plans and specifications. . . .

"PRIVILEGES OF OWNER

"To have at all times he may so desire during the construction of the work, an engineer or inspector on said construction job for determining whether or not it is in accordance with the plans and specifications."

The provision of the plans and specifications discussed by the parties is:

"The contractor will put in a caisson as he sees fit to hold back the dirt, which would be likely to cave, and the subsoil moisture, and on completion of the elevator he will guarantee a dry elevator pit."

The necessity of using a caisson was eliminated by agreement of the parties and a reduction was made in the cost thereof to the owner in the sum of $1,500 when the contractor concluded other methods for pit construction could be used instead.

The parties to the performance bond were the contractor and surety, appellants, and each of them signed it. In addition to the portion thereof set forth in the petition the bond, in part, reads:

"WHEREAS, Contractor did under date of March 27, 1950, enter into a contract with Owner for Construction of concrete grain elevator at Bridgeport, Kansas, in accordance with drawings and specifications prepared by Contractor, which contract is by reference made a part hereof, and is hereinafter referred to as the CONTRACT.

"Now, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that if the Contractor shall promptly and faithfully perform said CONTRACT, then this obligation shall be null and void; otherwise it shall remain in full force and effect."

Part of appellants' motion to require appellee to make the petition definite and certain was:

"Each particular in which plaintiff claims Johnson-Sampson Construction Company, Inc. did not fulfill said contract and each particular in which plaintiff claims Johnson-Sampson Construction Company, Inc., acted negligently or unskillfully, and what materials plaintiff claims Johnson-Sampson Construction Company, Inc. used which were unsuitable, and whether or not during the progress of the work plaintiff inspected and examined the work and materials, and if so, whether it approved same."

This motion was presented as to paragraph seven of the first cause of action. It was overruled. Appellants then filed the following motions:

"Defendants, and each of them, respectfully move that the court order striken from the said petition all the allegations of paragraph 7 of the FIRST CAUSE OF ACTION therein, adopted by reference in the SECOND and THIRD CAUSE OF ACTION therein for the reason that said allegations are merely conclusions of the pleader and are redundant and surplusage."

The motion was overruled. Thereafter appellants demurred separately to each cause of action on the ground each failed to state facts sufficient to constitute a cause of action and the petition as a whole was demurrable for the same reason and several causes of action were improperly joined. It is from the orders overruling the demurrers that the appeal is taken.

In order to avoid confusion we have refrained from stating all parts of appellants' motion to make definite and certain. The omitted portion will be treated later.

We shall first consider the motion and demurrer with special reference to paragraph seven of the first count to which the motion was primarily directed and on the basis of which the demurrer is partly argued. It is true paragraph seven employs the words, ". . . in an unskillful and negligent a manner." Appellants argue this constitutes a confusion of theories relative to the nature of the action, that is, whether it is based on contract or tort and the demurrer should have been sustained on that ground as well as on others. Appellee contends it is an action on contract. We agree. The above quoted words were intended to indicate the pleader's complaint the work was not performed in a proper manner and the materials used were unsuitable.

Are the allegations sufficient to allege a breach of the building contract? We think they are. It is alleged the contractor ". . . did not fulfill said contract on its part; but on the contrary, erected said elevator building in an unskillful and negligent *a* manner and of so unsuitable materials, the exact character, nature and kind of which are unknown to plaintiff and for that reason not set out herein in particular." These statements are tantamount to an allegation the contractor did not complete the job according to the plans and specifications, one of which was:

"The contractor will put in a caisson as he sees fit to hold back the dirt, which would be likely to cave, and the subsoil moisture, and on completion of the elevator he will guarantee a dry elevator pit."

It also is alleged in count one ". . . that shortly after its completion the walls of the elevator pit, floor and leg became and are leaky to subsurface waters, to such an extent as to prohibit the use of the same for the purposes intended by the contract. . . ."

It is true count two states the pit commenced to leak in the summer of 1951, which was approximately a year after its completion. These allegations in the separate counts, if inconsistent, may constitute proper matters to be considered on defense but do not render the separate counts demurrable. Appellants stress the following privilege of the owner:

"To have at all times he may so desire during the construction of the work, an engineer or inspector on said construction job for determining whether or not it is in accordance with the plans and specifications."

They point out the petition fails to disclose appellee made any complaint during the construction work; that count two discloses the contractor on or about August 21, 1950, represented to appellee the elevator was completed; appellee made final payment therefor on August 26, 1950, and appellee began to use the elevator for its intended purpose of storing grain. Appellants further emphasize the following provision of the contract:

"Completion of the job according to the plans and specifications and the handling of grain shall constitute acceptance."

The petition, however, alleged the job was not completed in accordance with the plans and specifications. We think the court did not abuse sound judicial discretion in overruling the previously discussed portion of the motion to make definite and certain and that the demurrer as to portions of the petition thus far considered was properly overruled.

Ordinarily an order overruling a motion to make a pleading definite and certain is not reviewable on appeal. An order overruling a motion to make a petition definite and certain is considered on appeal, where a general demurrer is later lodged against the petition, only to the extent of determining whether the district court abused sound judicial discretion in ruling on the motion and to determine whether the petition thereafter should be liberally or strictly construed on the demurrer thereto.

Where a ruling on a motion to make a petition definite and certain is considered on appeal for the limited purpose indicated in the preceding paragraph the motion must be considered in view of all allegations of the petition together with the terms and provisions of exhibits made a part of the petition and not merely with respect to some isolated paragraph of the petition.

Appellants seriously stress the fact count 2 discloses no loss from storage of grain in the elevator was suffered until September 18, 1951, more than one year from the acceptance of the elevator by appellee; that this court may take judicial notice of the unprecedented 1951 flood and that Bridgeport where the elevator is located is on the west bank of the Smoky Hill river. They further argue in view of the allegations of the petition we are obliged to indulge in speculation as to the cause of the damage and that it would seem at least as probable the unprecedented 1951 flood caused the wet elevator pit as well as any other speculative cause. We are not indulging in speculation of any character. We are dealing here only with allegations appearing on the face of the instant petition. Obviously we are not in this opinion passing on defenses appellants may assert concerning the cause of damage, whether it be the 1951 flood, matter of estoppel or any other defense. The question of liability of the contractor or bondsman, if the damage were caused by an act of God, is not raised on demurrer to this petition and we express no views thereon.

This brings us to a consideration of the other portion of appellants' motion to make the separate counts definite and certain. It was that the court order appellee to state in each of the three counts' whether the counts were based on appellee's contract with the contractor, dated March 14, 1950, or whether they were based on the bond, dated March 27, 1950, or on both the contract and bond. That part of the motion was likewise overruled. The petition disclosed it was an action against the contractor and the surety who furnished

the performance bond. The bond, as heretofore shown, expressly refers to the contract between the owner and the contractor. The bond was made in the name of both the contractor and surety and was signed by each of them. The action, therefore, was on the contract and bond and no further allegation in that respect was required as requested by the motion.

In further support of the demurrer to the entire petition appellants assert the petition does not allege the leakage was caused by any fault of the contractor. It is true the petition does not contain that direct and precise statement. It does, however, in substance, allege that upon failure of the contractor to fulfill the contract, ". . . the elevator pit, floor and leg became and are leaky to subsurface waters, to such an extent as to prohibit the use of the same for the purposes intended by the contract." We think the allegations are sufficient to withstand the general demurrer on that, as well as on other grounds urged.

Was there a misjoinder of causes of action? G. S. 1949, 60-601 provides:

"The plaintiff may unite several causes of action in the same petition, whether they be such as have been heretofore denominated legal or equitable, or both. But the causes of action so united must affect all the parties to the action, except in actions to enforce mortgages or other liens."

We have already indicated how the instant action affects both the contractor and his bondsman. It has been held the extent of a bondsman's liability is limited by the penalty named in the bond plus interest from the time the surety becomes liable to pay it. (*School District v. DeLano*, 96 Kan. 499, 152 Pac. 668.) The prayer is merely the pleader's notion of the amount of relief to which he is entitled. If a cause of action is stated the court will determine the proper legal redress which may or may not conform to the pleader's idea. (*Eagan v. Murray*, 102 Kan. 193, 170 Pac. 389.) The contractor ultimately may or may not be found liable in an amount greater than the penal sum of the bond. If it be determined the contractor is liable in a greater amount the bondsman will not suffer thereby. Although the authorities are not in complete harmony on the subject it has been held in this state the joinder of such causes of action does not result in injury to the substantial rights of appellants. (*Houston v. Delahay*, 14 Kan. 125.)

The orders overruling the separate demurrers are affirmed.

WEDELL, J. (dissenting in part): I dissent from paragraph 4 (c) of the syllabus and the corresponding portion of the opinion.