Nos. 86,539
86,813
86,814
86,815
86,816
86,817

In the Matter of the Conservatorship of ERIC FORTINO HUERTA,
a Minor, *et al.*
(41 P.3d 814)

98

Opinion filed March 8, 2002.

*Tracy A. Cole,* of Gilliland & Hayes, P.A., of Hutchinson, argued the cause and was on the briefs for appellants St. Paul Fire & Marine Insurance Company, United States Fidelity & Guaranty Company, and Old Republic Surety Company.

*Van R. Delhotal,* of Delhotal Law Offices, P.A., of Wichita, argued the cause and was on the brief for appellee Guardian Ad Litem and Successor Conservator of Eric Fortino Huerta.

*Janell Jenkins Foster,* of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Wichita, argued the cause and was on the brief for appellees Curatorship of Raymond N. Williams, Curatorship of Phillip R. Weidman and Guardianship

and Conservatorship of Roger L. Hughes, and *Andrea Ramsay*, of Wichita, was with her on the brief for appellees Curatorship of Adjui Lane and Curatorship of Roland A. Moore.

*Stanley R. Parker, Deanne Watts Hay*, and *Randy R. Debenham*, of Parker & Hay, LLP, of Topeka, were on the brief for *amicus curiae* Surety Association of America.

The opinion of the court was delivered by

ABBOTT, J.: Each of the six cases consolidated for review involves a claim by a successor conservator or curator against a former conservator or curator (principal) unable to adequately account for the ward's assets and the former conservator's or curator's surety. At issue is the sureties' liability for interest and costs in excess of the penal sum of the bonds, and the sureties' liability for interest assessed from the date of each conversion, rather than from the date of notice or demand on each surety.

In each of these cases, the successor conservator or curator filed suit against the principal and the surety as a result of the principal's conversion or theft of funds. In each case, the probate court found that the principals had converted assets and subsequently entered judgment against them and their sureties for the amount of the loss to each ward, plus interest from the dates of conversion, and conservator and attorneys fees incurred during the prosecution. In all but one case, judgment exceeded the limit of liability, or penal sum, of the bonds of the sureties as a result of the addition of prejudgment interest and successor conservator or curator fees.

## I. SURETIES' LIABILITY FOR AMOUNTS IN EXCESS OF THE PENAL SUM OF THE BOND

These cases raise issues with respect to the extent of the sureties' liability in regard to their fidelity bonds. For their first assertion of error, St. Paul Fire & Marine Insurance Company, United States Fidelity & Guaranty Company, and Old Republic Surety Company (sureties) contend that the probate court erred by awarding judgments to the injured wards in excess of the penal sum stated on the bonds.

"Where a trial court has fashioned a remedy to make the injured party whole, the test on appellate review is not whether the remedy is the best remedy that

could have been devised, but whether the remedy so fashioned is erroneous as a matter of law or constitutes a breach of trial court discretion." *Gillespie v. Seymour*, 250 Kan. 123, Syl. ¶ 10, 823 P.2d 782 (1991).

The sureties present two reasons for limiting their liability to the stated bond amount. We will consider each in its turn.

1. Kansas case law.

First, the sureties argue that case law in Kansas limits the liability of the surety to the amount of the bond. In support of this contention, the sureties cite *Koch v. Merchants Mutual Bonding Co.*, 211 Kan. 397, 507 P.2d 189 (1973); *School District v. Delano*, 96 Kan. 499, 152 Pac. 668 (1915); *McMullen v. Loan Association*, 64 Kan. 298, 67 Pac. 892 (1902); and *Burchfield v. Haffey*, 34 Kan. 42, 7 Pac. 548 (1885).

The curators for Raymond Williams, Phillip Weidman, Roger Hughes, Adjui Lane, and Roland Moore dispute the sureties' contention, characterizing it as an attempt to overturn well-settled law in Kansas. The curators state that Kansas follows the majority rule: While the penalty sum stated on the face of the bond may not be enlarged, a surety may be required to pay prejudgment interest and costs of litigation exceeding the penal sum of the bond. The curators contend that three Kansas cases have allowed the assessment of prejudgment interest against the surety: *McMullen*, *Burchfield*, and *Delano*.

Therefore, we turn to the case law cited by the parties in support of their respective positions. We examine these cases beginning with the earliest.

*Burchfield*, 34 Kan. 42, decided in 1885, is a case where this court considered the proper measure of damages in connection with a fidelity bond. The case arose from a subcontractual arrangement. H.B. Gurnsey signed a contract with C.J. Haffey in which Gurnsey agreed to transport mail from Elk Falls to Howard, Kansas, from May 19, 1880, to June 30, 1882. Gurnsey procured a fidelity bond in the sum of $300 to be paid to Haffey in the event that Gurnsey failed to "fully and faithfully perform the mail service . . . ." 34 Kan. at 43-44. Gurnsey did carry the mail for a short time, but then declined to comply further with the terms of the contract. The post office canceled its contract with Haffey, and

Haffey filed suit against Gurnsey and the sureties to recover damages of $300 for his loss of contract rights, plus interest from the date of the breach.

On appeal, the defendants complained that the court erred in instructing the jury as to the proper measure of damages. The trial court described Haffey's damages as

"the amount he would have received from the United States during the time Gurnsey was to carry the mail, according to the terms of his contract, from the time he ceased to carry the same, less the amount he was [to] pay Gurnsey for said service, not to exceed the sum of three hundred dollars with interest thereon at the rate of seven per cent. per annum from the time Haffey made demand of the defendants therefor." 34 Kan. at 44-45.

In *Burchfield*, this court noted that conflicting authority existed on the issue of allowing interest as damages beyond the penalty of the bond, but found the weight of American authority allowed the assessment of interest:

"The weight of American authority, however, is in favor of allowing interest. Sutherland, in his work on Damages, says:

" 'The penalty is the limit of liability at the time of the breach. Interest is afterward given, not on the ground of contract, but as damages for its violation, for delay of payment after the duty to pay damages for breach of the condition to the amount of the penalty had attached.' [Citation omitted.]

"In the notes to Sedgwick on Damages, it is stated:

" 'In the case of debt on bonds for the payment of money only, it seems now settled that interest may be recovered after default, even though it exceeds the penalty, and whether the action be against principal or surety.' [Citation omitted.]

"The penalty of the bond covers the misconduct of the principal; but the interest allowed on the penalty is for the misconduct of the sureties—for the delay in payment. If the damages were paid when due, they would have earned interest." 34 Kan. 45.

The *Burchfield* court ultimately affirmed the trial court, approving the assessment of interest as damages beyond the penalty of the bond. 34 Kan. at 46.

In 1902, this court considered another case involving the assessment of prejudgment interest against a surety. In *McMullen*, 64 Kan. 298, J.F. McMullen had been elected the secretary of the Winfield Building and Loan Association from its inception in January 1881 and was reelected for several years thereafter. Following

J.F.'s reelection on January 13, 1885, he procured a bond in the sum of $2,000 signed by J.C. McMullen as surety. The bond was executed and accepted on February 6, 1885. In 1892, the Loan Association brought suit against J.F. and his surety, alleging that from January 1, 1885, to December 31, 1885, J.F. had wrongfully converted its funds.

The trial court found that J.F. owed the association $2,035.87, and that on February 6, 1886, he had paid $197.46 of the debt. The trial court awarded judgment against both the principal and surety for the unpaid loss of $1,838.41, plus interest from January 31, 1886, for a total judgment of $3,725.84.

On appeal, the surety contested the trial court's assessment of interest damages in excess of the amount named in the bond. This court stated:

"When the secretary [J.F.] converted and wrongfully withheld the moneys of the association the condition of the bond was broken, and a liability arose against both principal and surety. Interest is recoverable against both of them from the time of the default, not as a part of the penalty, but for the detention of the money after the same became due. During the continuance of the default, interest was due from the secretary, just the same as in cases where money is not paid when the creditor becomes entitled to it, and the surety who bound himself against the defaults of the secretary and became liable for them when they occurred can claim no exemption from the rule." 64 Kan. at 304.

Once again, this court affirmed the trial court's assessment of interest in excess of the amount stated in the bond against a surety. 64 Kan. at 309.

In *DeLano*, 96 Kan. 499, the school board signed a contract with DeLano in 1909 to build an eight-room school building for $15,000 in Spearville, Kansas. Although DeLano began the work as planned, he abandoned the job on July 1, 1910. The board notified the surety of DeLano's abandonment, but the surety did not respond. Finally, the board engaged an architect to oversee the completion of the building. The board filed suit and the case was tried to the court. The district court entered judgment against DeLano in the amount of $1,594.35 for liquidated damages for the delay. The court also entered judgment against the surety for $5,868.08,

a sum in excess of the $5,000 bond, and the surety appealed. This court stated:

"The penalty of the bond is $5000, and that, of course, is the limit of defendant's obligation. It was the amount due which the company agreed to pay upon the contractor's noncompliance with the contract. It became liable for these claims up to the amount of the penalty at the time they accrued and should have been paid by it, and it is chargeable with interest on these claims after that time. . . .

" 'While the debt for which the surety can be held liable is limited by the penalty named in the bond, yet interest may be collected on such debt from the time when it became the surety's duty to pay it, even though the aggregate of principal and interest is more than the penal sum.' (*Lumber Co. v. Peterson & Sampson*, 124 Iowa 599, 607, 100 N.W. 550.)" 96 Kan. at 506.

In *Delano*, this court determined that the total principal debt of the contractor was $5,011.46, but that the surety was only liable for $5,000 of the principal debt. To that amount this court added the interest that accrued "since it became the duty of the company to pay the debt." 96 Kan. at 507. Once again, this court affirmed the district court's award of interest in excess of the stated bond amount. 96 Kan. at 507.

Factually, the 1973 *Koch* case is similar to the consolidated cases on review. In *Koch*, 211 Kan. 397, Milford Magee was appointed guardian of the person and estate of E. Sydney Smith, a minor, on June 23, 1965. Magee procured a surety bond from Merchants Mutual Bonding Company in the sum of $17,500, as required by K.S.A. 59-1101. The bond was conditioned on Magee's faithful discharge of all duties of his trust. Magee failed to inventory the assets of his ward's estate as required, however, and on March 16, 1966, a petition was filed with the probate court for Magee's removal.

Despite the factual similarities, however, the primary issue in *Koch* was not the assessment of interest in excess of the penal sum of the bond, but rather whether the surety was obligated to pay double the amount converted by its principal under K.S.A. 59-1704. The bonding company tendered payments to the ward totaling $16,917.86, which included interest on the funds converted.

The sureties note that in dicta found in the *Koch* case, this court restated the principles of law found in *McMullen*, 64 Kan. at 304-

05, regarding the measure of damages in connection with a bond; however, the sureties state that this court did not "rule on the continued applicability of *McMullen*." We disagree. There would be no reason to restate the rule of law found in *McMullen* if this court did not believe in its continued viability. Thus, in *Koch*, this court reaffirmed *McMullen*, stating:

"Under principles of general law the obligation of a bond is to be measured by the bond itself and may not be extended by implication or enlarged by construction beyond the terms of the executed contract. [Citations omitted.] . . .

. . . .

"This is not to say that the rule may never be subject to limited exceptions. By way of illustration, in *McMullen v. Loan Association*, [64 Kan. 298], this court held:

'While the penalty of the bond fixes the limit of liability of the surety at the time the liability arises, yet if the principal or surety fail to discharge that liability when it matures, interest may be allowed on the amount from the time the liability arises, even if the amount of recovery shall exceed the penalty. (Syl. ¶ 4.)'

"The rationale of this holding is explained in this fashion:

" '. . . Interest is recoverable against both [principal and surety] . . . from the time of the default, not as a part of the penalty, but for the detention of the money after the same became due. . . .' (p. 304.)" *Koch*, 211 Kan. at 400.

In *Koch*, this court affirmed the judgment of the court below, which included interest on the assets converted by Magee from the date of their conversion. We note, however, that in *Koch*, the total judgment against the surety did not exceed the penal sum of the bond. 211 Kan. at 402-05.

Our review of Kansas case law convinces us that a lower court may impose a judgment of interest against a surety in excess of the penal sum of the bond. Not only is this allowed, but the rule of law in this area has not changed in Kansas since 1885. Moreover, Kansas case law comports with the majority view.

"In actions for conversion it is generally recognized that interest, or the equivalent of interest, on the value of the property converted, may be recovered. While interest has usually been accepted as a proper measure of damages to be added to the value of the property from the date of conversion to the date of trial, the purpose of the award is to compensate the plaintiff for the loss sustained because of the taking of property." 18 Am. Jur. 2d, Conversion § 121, p. 233.

"In an action for breach of a penal bond, interest on the amount of the recovery is generally recoverable as an element of damages for delay upon the part of the

surety in making payment after he should have paid, even though the total sum is thus made to exceed the stated amount of the penalty of the bond. Judgment may be had for the whole penalty of the bond, and in addition thereto interest and costs, and need not be so limited that the whole recovery, including interest and costs, does not exceed the penalty. Nor does an allowance of reasonable costs and legal expenses violate the general rule which limits liability on a bond to the penal sum named in the bond." 12 Am. Jur. 2d, Bonds § 48, p. 401.

The sureties' argument that the law in Kansas limits the liability of the surety to the amount of the bond fails.

2. Kansas statutory law.

Second, the sureties maintain that limiting the total recovery against a surety to the bond amount is not an "unfair" interpretation of Kansas statutory law.

"A trial court's interpretation of a statute is a question of law, and this court's scope of review is unlimited." *In re Marriage of Killman*, 264 Kan. 33, 41, 955 P.2d 1228 (1997).

The sureties suggest that since K.S.A. 59-1101 does not specifically require a surety to pay all losses, interest, costs, and damages in the event of a conservator or curator's breach, and since K.S.A. 2001 Supp. 60-2103(d) requires supersedeas bond sureties to do so, under statutory rules of construction, the lack of a specific mandate from the legislature in K.S.A. 59-1101 requires this court to limit liability to the stated amount of the bond. In support, the sureties point to K.S.A. 59-1101, K.S.A. 59-1102, K.S.A. 59-1106, and *Hartford Cas. Ins. Co. v. Credit Union 1 of Kansas*, 268 Kan. 121, 992 P.2d 800 (1999).

In opposition, Huerta's successor conservator maintains that the fact that interest is not mentioned in K.S.A. 59-1101 does not compel the conclusion that it was the legislature's intent to override existing case law, but rather reinforces the strong general rule that interest is recoverable.

We have previously stated:

"The fundamental rule to be applied when interpreting a statute is that the intent of the legislature governs, where that intent can be ascertained. [Citation omitted.] Where a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should be. [Citation omitted.] Where, however, the face of the statute leaves its construction uncertain, the court is not limited to a mere consideration of the

language used, but may consider the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested. [Citation omitted.]" *Hartford Cas. Ins. Co.*, 268 Kan. at 124-25.

"Where a statute requires a bond to be given, the bond which is given in conformity with the statute must be interpreted in light of the statute and any provision at variance with the statute is to be disregarded. Statutory terms will be read into the bond in determining liability, and conditions not required by the statute will be stricken from the bond as surplusage." 268 Kan. 121, Syl. ¶ 4.

## We turn to the applicable statutes. K.S.A. 59-1101 states:

"Every fiduciary, except as otherwise provided in this act, before entering upon the duties of his or her trust shall execute and file a bond, with sufficient sureties, in such amount as the court directs, which amount shall not be less than 125 percent of the value of the personal property and the probable annual income from real estate which shall come into his or her possession, conditioned upon the faithful discharge of all the duties of the trust according to law."

## K.S.A. 59-1102 states:

"All such bonds shall run to the state of Kansas. They shall be subject to the approval of the district court and shall not be approved until the court is fully satisfied as to the sufficiency of the sureties. In case of breach of any condition thereof, an action on any such bond may be prosecuted in the name and for the benefit of any person interested."

A conservator is defined by statute as "an individual or a corporation who is appointed by the court to act on behalf of a conservatee . . . ." K.S.A. 2001 Supp. 59-3002. The requirements concerning curators for veterans are set forth in the provisions of K.S.A. 73-501 *et seq.* As used in that chapter, the term "curator" means "any person acting as a fiduciary for a pensioner." K.S.A. 73-501. Fiduciaries are held to the highest standards of conduct by the law.

"The term 'fiduciary relationship' refers to any relationship of blood, business, friendship, or association in which one of the parties places special trust and confidence in the other. It exists in cases where there has been a special confidence placed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interest of the one placing the confidence. A fiduciary has the duty to act in good faith and with due regard to the interests of the party placing confidence in the fiduciary." *Hawkinson v. Bennett*, 265 Kan. 564, Syl. ¶ 4, 962 P.2d 445 (1998).

In *Hartford Cas. Ins. Co.*, this court approved the concept that a statute requiring vehicle dealers to be bonded was "remedial for the protection of persons injured by a bonded party," and that the statute "should be liberally construed to accomplish its purpose." 268 Kan. at 126. Here, the purpose of the bond requirement for conservators and curators is also remedial for the purpose of protecting persons injured by the bonded party.

The sureties declare that K.S.A. 59-1101, 59-1102, and 59-1106 supersede early case law and contend that although "statutory bonds may impose some additional liability on parties . . . they cannot be extended beyond the fair import of the statutory terms." However, we note: "[T]he legislature is presumed to act with knowledge of relevant judicial decisions." *Junction City Education Ass'n v. U.S.D. No. 475*, 264 Kan. 212, 220, 955 P.2d 1266 (1998).

The central purpose of K.S.A. 59-1101 is to mandate that every fiduciary execute a bond sufficient to protect the assets of the fiduciary's ward; the statute does not concern itself with assessment of liability. "[W]hen a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in the statute." *In re Marriage of Killman*, 264 Kan. at 43. Here, the legislature's enactment of the statute in 1939 did not preempt or revise existing case law. To interpret the statute as the sureties would have us do would result in a loss to the wards which would defeat the purpose of the bond requirement. Thus, we find the sureties' interpretation of K.S.A. 59-1101 unconvincing. Absent a clear indication that the legislature intended to depart from case law, we decline to deviate from established precedent.

## II. DATE OF SURETIES' LIABILITY FOR INTEREST

The sureties insist that while an award of interest from the date of each defalcation appears correct against the conservator or curator based on *In re Conservatorship of Marcotte*, 243 Kan. 190, 756 P.2d 1091 (1988), there was no discussion in *Marcotte* that mandates the application of that rule to a surety. In addition, the sureties read the *Burchfield* and *Delano* decisions to mean that interest is allowed against the surety only after notice to the surety

of the loss, and the surety's failure to take action. The sureties also allege that under the language of *McMullen*, the award of interest is proper from the time the duty to discharge the liability "matures." Therefore, the sureties argue that in the consolidated cases before this court, since there is no requirement that assets be delivered to the ward until the conservatorship or curatorship is terminated or the conservator or curator is removed, the duty to discharge any liability to the conservatorship or curatorship is not triggered until the time of the settlement of the account.

The curators disagree and cite to *McMullen* as authority for the proposition that the liability of the surety arises at the time of the default rather than at the time demand for payment is made on the surety.

The successor conservator for Huerta argues that it is "absolutely clear that the principal who converts funds is liable for interest from the date of conversion." He further states that "Kansas follows the rule that the liability of the surety accrues at the same time as that of the principal and that the surety is as much liable for the interest as the principal." He asserts that in *McMullen*, this court held that both the principal and surety are liable for interest from the date of the conversion. In addition, he cites the authority of *Marcotte* and *Aetna Casualty and Surety Co. v. Hepler State Bank*, 6 Kan. App. 2d 543, 630 P.2d 721 (1981).

In *Burchfield*, this court upheld a damage award in the amount of the loss that did not exceed the penal sum of the bond, "with interest thereon at the rate of seven per cent. per annum from the time Haffey made demand of the defendants therefor." 34 Kan. at 44-45. Significantly, the time of demand for the principal and surety was affixed on the same date in *Burchfield*, not at the time of notice to the surety of the loss and the surety's failure to take action, as the sureties here assert.

Likewise, in *Delano* this court held that the surety was "liable for the principal debt which arises from the nonperformance of the contract to the amount of the penalty named in its obligation, and in addition to that it may be held for interest on such debt from the time it should have been paid . . . ." 96 Kan. at 499, Syl. ¶ 4. This court generally approved the lower court's assessment

of interest and confirmed that interest should be charged "since it became the duty of the company to pay the debt." 96 Kan. at 507. There was no mention of liability from the date of conversion in *Delano* because it was a case of default on a contract, not a case involving a conversion. Again, however, we observe that there is no language in the case that supports the sureties' contention that interest was due at the time of notice to the surety.

In *McMullen*, this court assessed interest beginning on January 31, 1886; however, the trial court found that J.F. McMullen was indebted to the association as of January 1, 1886. We note that the date of January 1 coincides with the statement that "the surety [was] liable for all the funds received by [J.F. McMullen] during the year 1885 and for which he had not accounted." 64 Kan. at 300. The sureties would have us believe that January 31, 1886, was the date the trial court found that the liability "matured." We note, however, that J.F. made a payment of $197.46 toward his indebtedness on February 6, 1886. Because the trial court could have applied that payment toward the total principal loss or interest owed by J.F., we are not at all confident of the veracity of the assertion made by the sureties.

Moreover, in *McMullen*, this court stated:

"Where there are successive terms and bonds, there is considerable difficulty *in fixing the time of misappropriation* and the liability of sureties, but when money is traced to the hands of an officer or trustee, and is not accounted for, the burden of proof is upon the principal or surety upon the bond to show what became of the money. The officer has knowledge at the time of misapplication, and by reason of the relations existing between principal and surety the latter is deemed to have knowledge of the fact, while the information would not be accessible to the parties indemnified." (Emphasis added.) 64 Kan. at 303.

The *McMullen* court clearly looked to the time of the principal's misappropriation when determining the date of liability in regard to assessing interest. In addition, the *McMullen* court recognized a special relationship between the principal and surety and imputed the knowledge of the principal concerning the conversion to the surety. "We think the liability of the surety depends upon the liability of the principal." 64 Kan. at 308. The *McMullen* decision, published 100 years ago, comports with current law allowing a sur-

ety to "step into the shoes" of a conservator and to perform his or her required duties in the event that the conservator fails to do so. See K.S.A. 2001 Supp. 59-3029.

In the *Marcotte* case, 77-year-old Fred Marcotte filed a voluntary petition for conservatorship due to physical incapacity to properly manage his property. The district court appointed a nephew and niece as co-conservators in 1980. Marcotte died testate in 1983, and the provisions of his will passed the bulk of his estate to eight beneficiaries in equal proportions. After the co-conservators filed their inventory of Marcotte's estate, five of the eight beneficiaries filed a petition alleging that the inventory failed to present an accurate, full, and final accounting. The beneficiaries challenged a series of gifts made by the co-conservators from 1980 to 1983 totaling $146,000. Of that amount, $92,000 was given to the co-conservators, their spouses, or their children.

The district court ruled that the gifts made by Marcotte after May 27, 1983, when he was mentally incapacitated, were void, but those gifts made prior to that date were valid. This court reviewed the propriety of the gifts made to the co-conservators prior to Marcotte's mental incapacity and held the co-conservators liable for the diminution to the estate. 243 Kan. at 198-99. In addition to requiring the co-conservators to return the gifts, this court approved the assessment of "interest on that amount from the date of payment as provided by K.S.A. 16-201." 243 Kan. at 199.

Under K.S.A. 16-201,

"[c]reditors shall be allowed to receive interest at the rate of ten percent per annum . . . for any money after it becomes due; for money lent or money due on settlement of account, from the day of liquidating the account and ascertaining the balance; for money received for the use of another and retained without the owner's knowledge of the receipt; for money due and withheld by an unreasonable and vexatious delay of payment or settlement of accounts; [and] for all other money due and to become due for the forbearance of payment whereof an express promise to pay interest has been made . . . ."

We take note that in an action for conversion, recovery of interest from the time of the conversion is the general rule of law. "Under the rule permitting the recovery of interest, or the equivalent of interest, in an action for conversion, such recovery is gen-

erally permitted from the time of the conversion." 18 Am. Jur. 2d, Conversion § 122, p. 234.

In *Aetna Casualty and Surety Co.*, our Court of Appeals stated: "In actions in the nature of trover for the conversion of personal property, the measure of damages is ordinarily the value of the property at the time of the conversion, with interest thereon to the date of the verdict." 6 Kan. App. 2d 543, Syl. ¶ 10.

The sureties' argument that the duty to discharge any liability to the conservatorship or curatorship is not triggered until the time of the settlement of the account fails. Here, because assets were wrongfully converted from the conservatorships and curatorships, it follows that such assets were due to the wards on the date of conversion. To hold otherwise would mean that the sureties could continue to earn interest on their reserves while the wards and conservatees suffer the loss of interest that would have been earned on monies rightfully belonging to the conservatorship or curatorship. K.S.A. 16-201 allows creditors to recover interest "for any money after it becomes due." We reaffirm our previous statement in *McMullen* that the liability of the surety depends upon the liability of the principal; thus, we hold that the district court did not err when it assessed interest against the sureties from the date of each conversion.

We note that Huerta's successor conservator invites this court to find that bonds issued pursuant to K.S.A. 59-1101 are "fidelity bonds," defined previously by this court in *Ronnau v. Caravan International Corporation*, 205 Kan. 154, 159, 468 P.2d 118 (1970), as a type of indemnity insurance contract. He argues that if these bonds are considered to be insurance contracts, this court should strictly construe them against the surety or insurer.

"A fidelity bond is an indemnity insurance contract whereby one for consideration agrees to indemnify the insured against loss arising from the want of integrity, fidelity or honesty of employees or other persons holding positions of trust. Such a contract is considered to be one on which the insurer is liable only in the event of a loss sustained by the insured." 205 Kan. 154, Syl. ¶ 2.

"There is a well-recognized difference between contracts of indemnity against loss and contracts of indemnity against liability. In the former, the insurance company does not become liable until the insured has suffered a proven loss, whereas

in the latter, the obligation of the insurance company becomes fixed when the liability attaches to the insured. [Citations omitted.]" 205 Kan. at 160.

Affirmed.

DAVIS, J., not participating.

BRAZIL, S.J., assigned■